<span style="color:red">**Corrected**</span>

# In the United States Court of Federal Claims

### No. 22-1602C
### Filed: September 29, 2023

```
* * * * * * * * * * * *        *
JOHN LIVINGSTON,               *
                               *
              Plaintiff,       *
                               *
       v.                      *
                               *
UNITED STATES,                 *
                               *
              Defendant.       *
                               *
* * * * * * * * * * * *        *
```

**Bethany L. Payton-O'Brien**, Attorney, Law Office of Bethany L. Payton-O'Brien, San Marcos, CA, for plaintiff.

**Kara M. Westercamp**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. With her were **Tara K. Hogan**, Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brian M. Boynton**, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, DC, **Captain Stacey R. Fernandez**, Judge Advocate, Litigation Attorney, United States Army Legal Services Agency, Fort Belvoir, VA, of counsel.

## O P I N I O N

<u>**HORN, J.**</u>

Plaintiff, John Livingston, filed his complaint in the above captioned case pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) (2018), for an alleged "taking" of his personal property pursuant to the Takings Clause of the Fifth Amendment to the United States Constitution which plaintiff alleges "requires compensation." Plaintiff, who was formerly in the United States Army, alleges that he "is entitled to the sum of $21,440.21, or such greater sum as proven at trial," equal to the cost of replacing personal property plaintiff alleges was seized by the Army during a criminal investigation and subsequent court-martial, and which property plaintiff alleges has not been returned. Defendant, the United States, moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) (2021), and, in the alternative, for failure to state a claim pursuant to RCFC 12(b)(6).

**FINDINGS OF FACT**

In his complaint, plaintiff identifies himself as "a United States citizen" and "a former Sergeant First Class [SFC] (Paygrade E-7), in the United States Army." (alteration added). Plaintiff alleges that "[a]s a result of a general court-martial sentence, he was reduced to Specialist [SPC] (Paygrade E-4)." (alterations added). According to plaintiff's complaint, "[o]n 12 November 1993, Plaintiff enlisted in the armed services and commenced his active-duty service with the United States Army." (alteration added). Plaintiff alleges that he remained on active duty "until his retirement on April 30, 2020."

According to plaintiff's complaint, "[i]n 2016, the Army Criminal Investigative Division (CID), Department of the Army, conducted a criminal investigation into SFC Livingston's alleged misconduct." (alteration added). Plaintiff alleges that as part of the Army CID investigation, "in May 2016, CID representatives from the U.S. Army Base, Fort Irwin, CA obtained and conducted a search of plaintiff's residence pursuant to a Search and Seizure Authorization looking for property 'identified as U.S. military equipment.'" Plaintiff further alleges that "[d]uring the CID search officers seized over 200 various tools and other property belonging to the Plaintiff that were not identified as U.S. Military Equipment," which property plaintiff refers to as the "SUBJECT TOOLS." (capitalization in original; alteration added). Plaintiff alleges that "CID officials seized the SUBJECT TOOLS from the Plaintiff's house, alleging the items had been stolen by Plaintiff," however, plaintiff did not attach to his complaint an itemization of the "SUBJECT TOOLS" or any additional description of the seized property. (capitalization in original).

Plaintiff alleges in his complaint in the above captioned case that "[o]n May 1, 2019, the United States Army preferred charges against SFC Livingston, alleging violations under the Uniform Code of Military Justice (UCMJ), specifically Article 107[1] (false official statement, one specification), and Article 121[2] (larceny of military property, 12

---

[1] Article 107 of the UCMJ, 10 U.S.C. § 907 (2018), provides, in relevant part:

Any person subject to this chapter who, with intent to deceive--
(1) signs any false record, return, regulation, order, or other official document, knowing it to be false; or
(2) makes any other false official statement knowing it to be false; shall be punished as a court-martial may direct.

10 U.S.C. § 907(a).

[2] Article 121 of the UCMJ, 10 U.S.C. § 921 (2018), provides, in relevant part:

Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind--
(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of

specifications, and larceny of personal property, one specification).” (alteration and footnotes added). Plaintiff further alleges that the Army dismissed one specification of larceny of military property on June 17, 2019, and that the Army dismissed six further specifications of larceny of military property on August 12, 2019.

According to plaintiff's complaint, “[o]n September 4, 2019, SFC Livingston was arraigned on the remaining charges and specifications (one specification of Article 107, false official statement, five specifications of larceny of military property, and one specification of larceny of personal property).” (alteration added). Plaintiff alleges that he “pleaded not guilty to all charges and specifications” on November 19, 2019. Plaintiff was tried by court-martial, and plaintiff alleges that he “was found guilty by the military judge of one violation of the UCMJ, Article 121, theft of a motor vehicle, and on November 20, 2019, he was sentenced to be confinement [sic] for four months, reduced to paygrade E-4, and to forfeit $1500 pay per month for four months.” (alteration added). Plaintiff further alleges that he “was found not guilty of the remaining five larceny charges, including the theft of various government property including SUBJECT TOOLS.” (capitalization in original). Plaintiff indicates in his complaint that, upon completion of his sentence, he retired from the Army.

Plaintiff alleges that he “was never charged with stealing most of the items seized by CID,” and that after his acquittal of all but one of the specifications against him, he “requested the return of the SUBJECT TOOLS,” but that “Defendant refused to return SUBJECT TOOLS.” (capitalization in original). Attached to plaintiff's response to defendant's motion to dismiss is a series of emails between plaintiff's counsel and Army personnel, beginning in March 2020. According to the emails attached to plaintiff's response to defendant's motion to dismiss, Brandon J. Williams, Special Agent and Detachment Sergeant at the Fort Irwin Army CID Office, sent an email to plaintiff's counsel at 10:54 A.M. on March 27, 2020, and informed plaintiff's counsel: “In accordance with Army Regulation 195-5, our agency is required to maintain evidence for all investigations until the entire legal process is completed (please see attached). Our agency will be able to return the requested property once all required legal processes are completed, and ownership status is verified.” In response to Special Agent Williams' email, plaintiff's counsel emailed Special Agent Williams at 11:03 A.M. on March 27, 2020, stating: “My client seeks the return of his property for which he was found NOT GUILTY. There is no appellate process for an acquittal. The only conviction pertained to the vehicle.” (capitalization in original). Special Agent Williams responded to plaintiff's counsel in an email sent at 11:38 A.M. on March 27, 2020:

---

      any person other than the owner, steals that property and is guilty of larceny; or

(2)  with intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, is guilty of wrongful appropriation.

10 U.S.C. § 921(a).

> I acknowledge your statement and would like to further clarify our requirements. As you've indicated below, John Livingston was not acquitted on all charges. The conviction pertaining to the vehicle was a result of the same investigation in which the property was collected as evidence. Additionally, the ownership of the property was not decided during the court proceedings. Although he was found not guilty of larceny for the government property, courtroom testimony indicated some of the property collected was owned by the government. The appeals process pertaining to the conviction for larceny of private property affects our ability to releases ALL evidence pertaining to the investigation.
>
> Once all appeals are conducted, and ownership of the property is verified, the evidence collected during the course of the investigation will be released.

(capitalization in original).

A follow-up email on March 31, 2020 was sent by Captain Jason Bruce Reeves of the Army. Mr. Reeves' email asked plaintiff's counsel:

> Can you be more specific as to what exactly Mr. Livingston is attempting to get back? The vast majority of the property recovered is the U.S. Army's property and your client admitted as much. He stated that he was keeping all those tools and equipment for safe keeping and retaining them for the Army. However, if you can tell us the exact items your client believes is [sic] his, we may be able to help recover those items.

(alteration added). Approximately one month later, on April 30, 2020, plaintiff's counsel sent an email to Special Agent Williams, stating:

> The list of property attached to this email indicates in blue highlighting the items we believe are my client's personal property, and for which there is no legal basis for CID to retain. Many of the items were not considered government property, or are clearly my client's own personal property unrelated to the investigation and/or charges.
>
> We request these items be returned as soon as possible to SFC Livingston. If the government believes certain items are govt [sic] property, please advise as to which items those are.

(capitalization in original; alteration added). Although plaintiff's counsel referred to a "list of property" attached to the above quoted April 30, 2020 email, the record before the court does not include the list as an attachment to the email, nor is the "list of property" included in any of plaintiff's attachments to his response to defendant's motion to dismiss. Special Agent Williams acknowledged receipt of plaintiff's counsel's email on April 30, 2020. The following day, May 1, 2020, Special Agent Williams sent an email to plaintiff's counsel

stating: "After coordination with our local SJA [Staff Judge Advocate] office, we were informed an appeal pertaining to SPC John Livingston's reduction in rank was pending. Are you able to advise on your client's behalf if there is still an intention to proceed with an appeal to the sentencing?" (alteration added). On May 6, 2020, plaintiff's counsel responded to Special Agent Williams via email:

> My client's appeal or request for review of his court-martial in accordance with Art [Article] 69,[3] UCMJ, has no bearing on whether his own personal

---

[3] Article 69 of the Uniform Code of Military Justice, 10 U.S.C. § 869 (2018), in effect at the time of the events relevant to the case under consideration, provides, in relevant part: "Upon application by the accused and subject to subsections (b), (c), and (d), the Judge Advocate General may modify or set aside, in whole or in part, the findings and sentence in a court-martial that is not reviewed under section 866 of this title (article 66)." 10 U.S.C. § 869(a). The relevant version of Article 69 also provides at subsection (c), in relevant part:

> (1)(A) In a case reviewed under section 864 or 865(b) of this title (article 64 or 65(b)) the Judge Advocate General may set aside the findings or sentence, in whole or in part, on the grounds of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, error prejudicial to the substantial rights of the accused, or the appropriateness of the sentence.
>> (B) In setting aside findings or sentence, the Judge Advocate General may order a rehearing, except that a rehearing may not be ordered in violation of section 844 of this title (article 44).
>> (C) If the Judge Advocate General sets aside findings and sentence and does not order a rehearing, the Judge Advocate General shall dismiss the charges.
>> (D) If the Judge Advocate General sets aside findings and orders a rehearing and the convening authority determines that a rehearing would be impractical, the convening authority shall dismiss the charges.

10 U.S.C. § 869(c)(1). Article 69 further provides at subsection (d), in relevant part:

> (1) A Court of Criminal Appeals may review the action taken by the Judge Advocate General under subsection (c)--
>> (A) in a case sent to the Court of Criminal Appeals by order of the Judge Advocate General; or
>> (B) in a case submitted to the Court of Criminal Appeals by the accused in an application for review.
> (2) The Court of Criminal Appeals may grant an application under paragraph (1)(B) only if--

property can be returned. We have provided a list of the items which belong to him, and were not subject to any charges. Therefore, this "evidence" can be returned to him. I would ask that if you believe his own personal property, seized from his house, for which he faced no charges, you please provide the instruction, law or regulation on which you are relying to deny the return of such property to my client.[4]

(alteration and footnotes added). Special Agent Williams responded to plaintiff's counsel in an email sent on May 13, 2020:

The doctrine we adhere to concerning evidence collection and processing is Army Regulation 195-5. In accordance with AR 195-5, our organization is not authorized to release evidence/property without the approval and written authority of SJA (in most instances). Specifically regarding the evidence/property currently maintained by the Fort Irwin CID Office pertaining to SPC Livingston's investigation… I require the Fort Irwin SJA Office to provide the legal authority for me to disposition [sic] the requested items. I inquired into the appeals pending at the behest of the local SJA Office to clarify the remaining legal proceedings. I will facilitate the disposition of all items associated with SPC Livingston once SJA approves it. Please coordinate with the Fort Irwin SJA Office if you require further clarification on their requirements to provide evidence disposition authority.

(ellipsis in original; alteration added).

According to emails attached to plaintiff's response to defendant's motion to dismiss, Special Agent Williams sent the following email to plaintiff's counsel on July 23, 2020:

---

(A)  the application demonstrates a substantial basis for concluding that the action on review under subsection (c) constituted prejudicial error; and

(B)  the application is filed not later than the earlier of—
    (i)  60 days after the date on which the accused is notified of the decision of the Judge Advocate General; or
    (ii)  60 days after the date on which a copy of the decision of the Judge Advocate General is deposited in the United States mails for delivery by first-class certified mail to the accused at an address provided by the accused or, if no such address has been provided by the accused, at the latest address listed for the accused in his official service record.

10 U.S.C. § 869(d)(1)-(2).

4 Although this sentence is awkwardly drafted, it is correct as quoted.

> The Fort Irwin CID Office can begin the process to release the property and evidence associated with CID LER: 00137-2016-CID146-009369. An assessment was conducted which determined the highlighted items within the attached document are government property to be released to the appropriate military unit. If Mr. Livingston would like to provide evidence to prove ownership of any of the highlighted items, please provide the appropriate documentation to this office by 22 Aug 20. The highlighted items are tentatively scheduled to be released to the military unit after 22 Aug 20. All the remaining items collected during the aforementioned investigation (with the exception of the vehicle to be returned to its owner) can be released to Mr. Livingston pending coordination with him to receive those items.

(capitalization in original). The "attached document" referred to in Special Agent Williams' July 23, 2020 email to plaintiff's counsel also is not included in plaintiff's attachments to his response to defendant's motion to dismiss. Plaintiff's counsel responded to Special Agent Williams in an email sent at 3:07 P.M. on July 25, 2020, and stated:

> We are reviewing the ECD,[5] but at first glance, there are items we believe belong to my client and are NOT unit property. We ask that nothing be moved or returned until such time as we can review the items in question. I am not in Ft Irwin until August 21, and we need to inspect the items.

(capitalization in original; footnote added). Approximately 45 minutes later, at 3:52 P.M. on July 25, 2020, plaintiff's counsel sent another email to Special Agent Williams which stated:

> We would like to come and inspect the disputed property at 1300 on August 21. We believe many of the items belong to Livingston as his own personal property and are NOT government property. I note many of the items were seized and he was never charged with nor convicted of, and therefore the government has no basis to claim that the items are government property. The presumption is not "We believe the items are Govt property unless you prove otherwise" but rather the items are presumed to be HIS and the govt must prove otherwise.

(capitalization in original). Special Agent Williams responded to plaintiff's counsel in an email sent on July 29, 2020, and reiterated his prior explanation:

> All items identified as government property will be released to the appropriate military unit. If Mr. Livingston would like to provide evidence to prove ownership of any of the items, please provide the appropriate documentation to this office by 22 Aug 20. If no documentation can be

---

[5] The parties' filings and the attachments do not define "ECD."

provided to substantiate ownership, any property disputes may be addressed by civil lawsuit.

According to plaintiff's complaint in the above captioned case, "[o]n August 18, 2020, Plaintiff requested the Army Inspector General investigate the seizure of the SUBJECT TOOLS, and to assist Plaintiff in their recovery." (capitalization in original; alteration added). Plaintiff alleges in his complaint that the next day, "[o]n August 19, 2020, the United States Army Inspector General denied Plaintiff's request for an Inspector General investigation into the SUBJECT TOOLS." (capitalization in original; alteration added). According to the attachments to plaintiff's response to defendant's motion to dismiss, plaintiff's counsel sent an email to Special Agent Williams on August 19, 2020, stating:

> As requested previously, my client will come to pick up his property and then will also need to take photographs of the property that he claims is his, but CID is refusing to give to him. We dispute the accounting provided to him in which the government claims certain items are Govt property (without proof the government owns the items). My client is not required to prove the items are his--the command is required to prove the items are govt property (since they were seized from my client's house without any probable cause--and many of them were not even subject to any charges in this case.) The government is not permitted to just seize property from a servicemember and "claim" it belongs to the government--and then tell the servicemember to find receipts from years ago to "prove" it belongs to him. You came to HIS house, and took HIS property. Government needs to PROVE it is government property. Not just "we think it is" mere speculation.

> Please allow Livingston to take photos of the items you claim are not his property, so that he has evidence of the items he has now lost in an improper seizure by CID. We will need this for our claim against the government.

(capitalization in original). Special Agent Williams responded to plaintiff's counsel in an email sent on August 27, 2020:

> The attached documents reflect the evidence/property collected during the investigation in which Mr. Livingston was involved. The items described in the attached were released to the appropriate military unit and Mr. Livingston as indicated in the chain of custody section of each document. Mr. Livingston was also provided photographs of the items this office collected.

The "attached documents" referred to in Special Agent Williams' August 27, 2020 email, as quoted above, once again, are not included in plaintiff's attachments to his response to defendant's motion to dismiss. According to plaintiff's response to defendant's motion to dismiss, "[t]he subject property was released by CID back to the command for

disposition in August 2020." (alteration added). Nowhere in plaintiff's complaint, in plaintiff's response to the motion to dismiss, or in the attachments to either, are any documents or other evidence included indicating whether such "disposition" occurred.

Plaintiff's complaint alleges that "[o]n November 18, 2020, Plaintiff, through counsel, formally requested Defendant return the SUBJECT TOOLS by filing a Claim for Damage, Injury, or Death, Standard Form (SF) 95 [Standard Form 95] to Army CID at Fort Irwin, CA. Plaintiff included an itemized list and photographs of the SUBJECT TOOLS." (capitalization in original; alterations added). Not attached to plaintiff's complaint, although attached to defendant's motion to dismiss, is a version of plaintiff's Standard Form 95, "**CLAIM FOR DAMAGE, INJURY, OR DEATH**," (capitalization and emphasis in original), with a list of the allegedly seized property, which does not bear plaintiff's signature or a date. Although plaintiff's Standard Form 95 attached to defendant's motion to dismiss lacks plaintiff's signature and date of signing, neither party has contested the validity or accuracy of the unsigned version of the Standard Form 95 that appears in the record before the court. The unsigned version of the Standard Form 95 attached to defendant's motion to dismiss claims property damage in the amount of $21,440.21[6] and states:

> On 12-13 May 2016, Army Criminal Investigation [sic] Division (CID) agents searched my on-base property at Ft. Irwin, CA and seized numerous items of my personal property, alleging they were stolen. Ultimately, I did not face any criminal charges for these items or I was found not guilty of larceny. After my court-martial was completed, I demanded the return of my personal property seized by CID. In August 2019, my attorney demanded the return of my personal property; government has refused.

(capitalization in original; alteration added). The Standard Form 95 describes the property damage claimed by plaintiff: "Various items, see attached documents. My personal property was unlawfully seized or was damaged by the government."

Accompanying plaintiff's unsigned Standard Form 95 in the record, is an "**Addendum to SF95**," (the Addendum), which identifies itself as relating to plaintiff Livingston's "**Claim for Lost and Damaged Property**." (capitalization and emphasis in original). Similar to the unsigned Standard Form 95, the Addendum was not attached to plaintiff's complaint, but instead was attached to defendant's motion to dismiss. As with the unsigned Standard Form 95, neither party has contested the validity or accuracy of the Addendum as it was submitted to the court and appears in the record before the court. The Addendum sets forth a list of plaintiff's tools and other items which plaintiff claims were seized or damaged, identified by "**NAME/PHOTO NUMBER/WHERE TO PURCHASE OR REPLACE IT**," cost, and "**CID ECD #**." (capitalization and emphasis in original). The list in the Addendum is eight pages long and describes where the tools may

---

[6] The amount of $21,440.21 in plaintiff's Standard Form 95 is the same as the amount sought in plaintiff's complaint in this court, as well as the amount sought in plaintiff's complaint in his earlier filed complaint in Case No. 22-15C.

be purchased or replaced, for example, at retailers such as "HOME DEPOT.COM." (capitalization in original). The Addendum also lists one item identified as "**DAMAGED ITEMS**," a "DIAMOND PLATED TOOLBOX" from "NORTHERN TOOLS.COM." (capitalization and emphasis in original). The Addendum to plaintiff's Standard Form 95 states a "**GRAND TOTAL**" of the value of all items claimed as lost or damaged by plaintiff, $21,440.21. (capitalization and emphasis in original).[7]

Attached to defendant's motion to dismiss is a document referred to by defendant as the "Acknowledgement of Receipt of Army Claim No. 21-041-T005," which is dated December 2, 2020 (the December 2020 Acknowledgement). The December 2020 Acknowledgement states that the United States Army, Office of the Staff Judge Advocate at Fort Irwin, California, received plaintiff's administrative claim for compensation "in the amount of **$21,440.21**" on December 2, 2020. (capitalization and emphasis in original). The December 2020 Acknowledgement states, "[y]our claim will be processed under the

---

[7] The amount of $21,440.21 in plaintiff's Addendum is the same amount as in the Standard Form 95, in plaintiff's earlier filed complaint and in plaintiff's complaint in the above captioned case.

Federal Tort Claims Act[8] or the Military Claims Act[9]. (FTCA or MCA). The Act[10] contains a mandatory six-month administrative investigation and settlement period." (alterations and footnotes added). The December 2020 Acknowledgement provides information with respect to the FTCA and the MCA, including that "[f]iling of an administrative claim tolls the statute of limitations indefinitely or until the Army takes final administrative action in writing on the claim. Final administrative action consists of a denial or final settlement." (alteration added). The December 2020 Acknowledgement further provides:

> The Act permits you to file suit six months after the claim was filed, provided the claim has been properly filed and adequately documented. However, filing suit is not required, particularly if satisfactory progress is being made in the administrative claim process. If you do not file suit, the statute of

---

[8] The FTCA is codified at Chapter 171 of Title 28, United States Code, and at 28 U.S.C. § 1346 (2018). The FTCA provides, at 28 U.S.C. § 2674, that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674 (2018) (alteration added).

[9] The MCA is codified at 10 U.S.C. § 2733 (2018), which provides, in relevant part:

> (a) Under such regulations as the Secretary concerned may prescribe, he, or, subject to appeal to him, the Judge Advocate General of an armed force under his jurisdiction, or the Chief Counsel of the Coast Guard, as appropriate, if designated by him, may settle, and pay in an amount not more than $100,000, a claim against the United States for--
> (1) damage to or loss of real property, including damage or loss incident to use and occupancy;
> (2) damage to or loss of personal property, including property bailed to the United States and including registered or insured mail damaged, lost, or destroyed by a criminal act while in the possession of the Army, Navy, Air Force, Marine Corps, Space Force, or Coast Guard, as the case may be; or
> (3) personal injury or death;
> either caused by a civilian officer or employee of that department, or the Coast Guard, or a member of the Army, Navy, Air Force, Marine Corps, Space Force, or Coast Guard, as the case may be, acting within the scope of his employment, or otherwise incident to noncombat activities of that department, or the Coast Guard.

10 U.S.C. § 2733(a).

[10] The December 2020 Acknowledgement does not specify whether claims will be processed under the FTCA or the MCA.

limitations will be tolled until you are notified in writing by certified mail of the final administrative action by the Army.

Attached to plaintiff's response to defendant's motion to dismiss is a letter dated February 17, 2021 from the Department of the Army, Office of the Judge Advocate General, to plaintiff (the February 2021 Letter). The February 2021 Letter states:

This office completed review of your application submitted pursuant to Article 69, Uniform Code of Military Justice (UCMJ), concerning your general court-martial (General Court-Martial Order Number 1-1, Headquarters and Headquarters Detachment Regimental Support Squadron, 11th Armored Calvary Regiment, Fort Irwin, California, dated November 20, 2019. [sic] Based on this review, The Judge Advocate General declined to set aside the findings or sentence, in whole or in part, on the grounds stipulated in Article 69(c), UCMJ, or take other actions in your case.

In accordance with Article 69(d)(1)(B), UCMJ, you may apply to the United States Army Court of Criminal Appeal for review of the action taken by The Judge Advocate General in your case under Article 69(c), UCMJ. You must file your application no later than (1) 60 days after the date on which you're notified of this decision or (2) 60 days after the date on which the decision is mailed to your address, whichever is earlier. The findings and sentence in your case will be final and conclusive under Article 76, UCMJ, if you do not apply, or the Army Court of Criminal Appeals rejects or takes no further action on your application.

(alteration added).

Plaintiff alleges that "[o]n March 18, 2021, Defendant denied Plaintiff's request to return the SUBJECT TOOLS and denied him compensation for the SUBJECT TOOLS, which denial was received by Plaintiff on April 2, 2021." (capitalization in original; alteration added). The March 18, 2021 denial of plaintiff's claim is attached to defendant's motion to dismiss (the March 18, 2021 Denial). The March 18, 2021 Denial provides, in relevant part:

This notice constitutes final administrative action on your claim, which you filed on November 19, 2020, against the United States, Army claim number 21-041-T005, for lost and damaged personal property as the result of an incident at Fort Irwin, California.

Your claim is disapproved. The Federal Tort Claims Act (FTCA), 28 U.S. Code Section 2672, and Sections 2671-2680, is a limited waiver of sovereign immunity, and without specific authority therein, we have no basis on which we may pay a claim. "To be payable, a claim must arise from the

negligent acts or omissions of an employee of the Government".[11] In this case, there is no evidence of negligence by government employees acting within the scope of their employment.[12] Thus, the United States may not be held liable for the tortious acts or omissions under the FTCA. You did not substantiate your claim in accordance to CFR Title 28 Section 14.4 regarding property damage. As a result, complete liability and/or negligence of Government employees cannot be established.

If you are dissatisfied with the action taken on this claim, you may request reconsideration of this action in lieu of filing suit. A reconsideration request must be received in writing by this office no later than six months from the date of this letter. Receipt of a reconsideration request will automatically toll the running of the six-month period for filing suit described in the paragraph below. The statute of limitations will be tolled until you receive written notice of the final action on your reconsideration request. A reconsideration request should fully set forth the basis for the request and should be accompanied by any relevant documentary evidence.

Your reconsideration request must have supporting documentation and/or evidence as to the Government's negligence causing damage to your insured's vehicle.

Alternatively, you may file suit in an appropriate United States District Court no later than six months from the date of mailing of this letter. *See* 28 C.F.R.

---

[11] It is unclear what provision the March 18, 2021 Denial is quoting when it states: "To be payable, a claim must arise from the negligent acts or omissions of an employee of the Government," as the phrase is not include in provisions of the FTCA between 28 U.S.C. § 2671-2680 referenced in the March 18, 2021 Denial.

[12] The regulation at 28 C.F.R. § 14.4 (2022) provides, in relevant part:

> In support of a claim for injury to or loss of property, real or personal, the claimant may be required to submit the following evidence or information:
> (1) Proof of ownership.
> (2) A detailed statement of the amount claimed with respect to each item of property.
> (3) An itemized receipt of payment for necessary repairs or itemized written estimates of the cost of such repairs.
> (4) A statement listing date of purchase, purchase price and salvage value, where repair is not economical.
> (5) Any other evidence or information which may have a bearing on either the responsibility of the United States for the injury to or loss of property or the damages claimed.

28 C.F.R. § 14.4(c).

§ 14.9(a). By law, failure to comply with that time limit forever bars the claim. *See* 28 U.S.C. § 2401(b).

(capitalization in original; footnotes added). Accompanying the March 18, 2021 Denial is a "MEMORANDUM FOR Staff Judge Advocate, National Training Center & Fort Irwin," (capitalization in original) (the March 2021 Memorandum), which states with respect to "Type of Claim & Brief Description of Incident," that "[t]he claim was submitted regarding lost, stolen, and damaged personal property collected by government officials under provisions of the Federal Tort Claims Act (FTCA)." (emphasis in original; alteration added). A section of the March 2021 Memorandum titled: "Opinion" repeats the reasoning stated in the March 18, 2021 Denial sent to plaintiff. (capitalization and emphasis in original).

Plaintiff alleges that the same day as he received the denial of his Standard Form 95 request for compensation, April 2, 2021, he "requested Defendant's reconsideration of its denial of return of the SUBJECT TOOLS and compensation for the loss of such property." (capitalization in original). Plaintiff alleges that the Army later issued a "final denial of the return of SUBJECT TOOLS" on June 9, 2021, at which point plaintiff alleges he had "exhausted all administrative remedies available to him for the return of SUBJECT TOOLS." (capitalization in original). The June 9, 2021 denial of plaintiff's request for reconsideration is attached to defendant's motion to dismiss (the June 9, 2021 Denial). The June 9, 2021 Denial states, in relevant part:

> This notice constitutes final administrative action on your claim, which you filed on November 19, 2020, against the United States, Army claim number 21-041-T005, for lost and damaged personal property as the result of an incident at Fort Irwin, California. Your claim was denied on March 18, 2021. The Fort Irwin Army Claims Office received your request for reconsideration of denial on April 20, 2021.
>
> Your request for reconsideration is disapproved.

The reasoning set forth in the June 9, 2021 Denial appears to be identical to the reasoning set forth in the March 18, 2021 Denial. In addition to the reasoning that also was in the March 18, 2021 Denial, the June 9, 2021 Denial further states, in relevant part: "Your reconsideration request did not have supporting documentation and/or evidence as to the Government's negligence causing alleged damage, lost, or unlawfully seized property. Your reconsideration request contained no new evidence to substantiate alleged negligence of government employees." The June 9, 2021 Denial also contains a description of plaintiff's option to file suit in a United States District Court within six months of the denial, which description is identical to the description in the March 18, 2021 Denial. Similar to the March 2021 Memorandum, accompanying the June 9, 2021 Denial is a "MEMORANDUM FOR Staff Judge Advocate, National Training Center & Fort Irwin," (capitalization in original) (June 2021 Memorandum), which appears to repeat the reasoning included in the June 9, 2021 Denial. In addition to the reasoning set forth in the June 9, 2021 Denial, the June 2021 Memorandum also states:

In this case, there is no evidence of negligence by government employees acting within the scope of their employment, nor is there evidence that CID agents breached their duty as they properly collected evidence according to Army Regulations as prescribed on the DA Form 4137 during the arrest. Also, the claimant has not substantiated his claim that CID agents damaged his personal property during collection and itemization of his personal property during arrest.

(capitalization in original).

Attached to plaintiff's response to defendant's motion to dismiss is an Order from the United States Army Court of Criminal Appeals, dated June 15, 2021, stating that "[t]he Court has considered the application for grant of review of the decision of the Judge Advocate General," and ordering that "[t]he application is hereby denied." (alterations added). The Order of the Army Court of Criminal Appeals does not provide further explanation for its denial of plaintiff's application.

In the current complaint before this court, plaintiff repeatedly emphasizes the "validity" of the seizure by which the Army acquired plaintiff's property. Plaintiff states in his complaint currently before this court that the "SUBJECT TOOLS were seized pursuant to a valid military search and seizure authorization." (capitalization in original). Plaintiff emphasizes, however, that his property "was not seized pursuant to criminal laws or as part of an in rem forfeiture procedure. The property in this case was seized as evidence in a criminal investigation and has not been returned to the Plaintiff." Plaintiff's complaint characterizes the seizure of his property as "pursuant to a Search and Seizure Authorization," as "pursuant to a valid military search and seizure authorization," as "seized as evidence in a criminal investigation," as "a taking pursuant to a valid warrant," as "an authorized act of government officials," as "for public use as evidence in a criminal proceeding," and as "a taking for public use for which the Takings Clause of the Fifth Amendment requires compensation." (capitalization in original). In the current complaint, plaintiff claims entitlement to damages in the amount of $21,440.21, as well as the costs of filing the above captioned case, interest, and "[a]ny other relief which the Court deems equitable." (alteration added).

Prior to plaintiff's filing of the case currently under review in this court, plaintiff had filed an earlier complaint, also in the United States Court of Federal Claims on January 6, 2022, John Livingston v. United States, Case No. 22-15C, which was assigned to Judge Matthew H. Solomson. Plaintiff's complaint in Case No. 22-15C was attached to defendant's motion to dismiss in the above captioned, current case, Case No. 22-1602C. The vast majority of the allegations contained in the complaint in the earlier case filed by plaintiff are identical to the allegations in plaintiff's current complaint assigned to the undersigned, with mostly minor changes such as the grouping of allegations across paragraphs. Plaintiff alleged in Case No. 22-15C, however, that "Defendant acted negligently and improperly when it improperly investigated Plaintiff's criminal allegations

and improperly seized Plaintiff's personal property not associated with Plaintiff's criminal investigation." Plaintiff's complaint in the earlier case also alleged:

> 32. The government exceeded the scope of the Search and Seizure Authorization when it seized Plaintiff's personal property, property which was not identified in any way as "U.S. Military Equipment".
> 33. Defendant acted negligently and improperly when it refused Plaintiff's numerous administrative requests for the return of his own personal property included within the SUBJECT TOOLS.
> 34. As a result of Defendant's negligent and improper actions delineated above, Plaintiff is entitled to the sum of $21,440.21, or such greater sum as proven at trial, from Defendant, and to other relief as sought herein.

(capitalization in original). Despite the use of such "negligent" and "improper" language to describe the Army's actions, plaintiff's earlier complaint did not expressly identify his claim as a tort. Plaintiff's allegations in the Case No. 22-15C complaint relating to the government's "negligent" and "improper" behavior, as quoted above, however, are absent from plaintiff's complaint in the above captioned, current case. Plaintiff and defendant were represented in Case No. 22-15C by the same counsels for plaintiff and defendant as in the current case. The amount sought by plaintiff in Case No. 22-15C, "$21,440.21, or such greater sum as proven at trial," is identical to the amount sought by plaintiff in the current, above captioned case.

Defendant filed a motion to dismiss plaintiff's complaint in the earlier filed case, Case No. 22-15C, pursuant to RCFC 12(b)(1) and pursuant to RCFC 12(b)(6) on March 14, 2022. Defendant's motion to dismiss plaintiff's complaint in Case No. 22-15C is attached to defendant's motion to dismiss in the current case. In its motion to dismiss in the earlier case, defendant argued that the United States Court of Federal Claims lacked jurisdiction "[b]ecause this claim is grounded in tort and Mr. Livingston does not identify any other money-mandating statute." In the alternative, defendant argues that plaintiff had failed to state a claim for a takings by the federal government "because he alleges that the government action was 'negligent and improper.'" (alteration added). According to the docket sheet for the earlier case, Case No. 22-15C, which also was attached to defendant's motion to dismiss in the current above captioned case, plaintiff did not file a response to defendant's motion to dismiss the complaint. Instead, the parties in the earlier case, on April 20, 2022, entered a joint stipulation of dismissal pursuant to RCFC 41(a)(1)(A)(ii) (2021). Case No. 22-15C was dismissed, without prejudice, and judgment was entered on the same day, on April 20, 2022.

After the earlier case, Case No. 22-15C, was dismissed, on October 27, 2022, plaintiff subsequently filed a new complaint in Case No. 22-1602C, the complaint currently before this court and the subject of defendant's current motion to dismiss. In plaintiff's complaint in Case No. 22-1602C, plaintiff removed the above-quoted paragraphs setting forth the language of a tort claim and, instead, inserted the following paragraphs:

30. The property in this case was not seized pursuant to criminal laws or as part of an <u>in rem</u> forfeiture procedure. The property in this case was seized as evidence in a criminal investigation and has not been returned to the Plaintiff.

31. The Takings Clause of the Fifth Amendment protects property owners from uncompensated taking. "Nor shall private property be taken for public use without just compensation." It has long been held that "a Fifth Amendment takings claim falls with the Tucker Act's grant of jurisdiction because it is a claim against the United States founded upon the Constitution." <u>Knick v. Township of Scott</u>, 129 [sic] S. Ct. 2162 (2019) <u>see Acceptance Ins. Cos</u> [sic]<u> v. United States</u>, 503 F.3d 1228 (Fed. Cir [sic] 2007).

32. As a result of Defendant's actions delineated above, Plaintiff is entitled to the sum of $21,440.21, or such greater sum as proven at trial, from Defendant, and to other relief as sought herein.

(capitalization; alterations added). In addition to the above paragraphs, plaintiff's complaint in Case No. 22-1602C contains minor phrasing and organizational differences from the complaint in the earlier Case No. 22-15C, however, the two complaints set forth the same factual allegations.

According to the cover sheet completed by plaintiff's counsel and filed with plaintiff's complaint in the case currently under review, plaintiff's counsel checked "No" in response to the question: "Is this case directly related to any pending or previously filed case(s) in the United States Court of Federal Claims?" Plaintiff's counsel did not indicate at the time of filing the complaint in the current case before this court that plaintiff previously had filed a complaint, based on the same facts, and that the parties had stipulated to a dismissal of the earlier complaint in this court, Case No. 22-15C, without prejudice. In the case currently under review, defendant has again filed a motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) and 12(b)(6). Defendant's motion has been fully briefed.

## DISCUSSION

Defendant first moves to dismiss plaintiff's complaint on the grounds that the court lacks subject matter jurisdiction over plaintiff's claim for a taking of his property. "Subject-matter jurisdiction may be challenged at any time by the parties or by the court <u>sua sponte</u>." <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (quoting <u>Fanning, Phillips, & Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998)), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2004), <u>cert.</u> <u>denied</u>, 545 U.S. 1127 (2005); <u>see</u> <u>also</u> <u>St. Bernard Parish Gov't v. United States</u>, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even <u>sua</u> <u>sponte</u>, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (alteration added) (citing <u>Foster v. Chatman</u>, 578 U.S. 488, 496 (2016))); <u>Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.</u>, 476 F.3d 1329, 1330 (Fed. Cir. 2007); <u>Haddad v. United States</u>, 152 Fed. Cl. 1, 16 (2021); <u>Fanelli v.</u>

United States, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2018).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2021); Fed. R. Civ. P. 8(a)(1), (2) (2023); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting 5 C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. 180, 190 (2019). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (first alteration added)).

As explained above, plaintiff's current complaint asserts only one claim, for a takings pursuant to the Fifth Amendment to the United States Constitution, which is a "claim against the United States" that is founded "upon the Constitution" within the meaning of the Tucker Act. See 28 U.S.C. § 1491(a)(1); John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008) ("The Tucker Act, 28 U.S.C. § 1491(a)(1), provides the Court of Federal Claims with jurisdiction over takings claims brought against the United States." (citing Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004))). The United States Court of Appeals for the Federal Circuit has held, however, "the mere recitation of a basis

for jurisdiction by either party or a court, is not controlling; we must look to the true nature of the action." Livingston v. Derwinski, 959 F.2d 224, 225 (Fed. Cir. 1992) (citing Williams v. Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986); Chem. Eng'g Corp. v. Marlo, Inc., 754 F.2d 331, 333 (Fed. Cir. 1984); see also Juancheng Kangtai Chem. Co., Ltd. v. United States, 932 F.3d 1321, 1326 (Fed. Cir. 2019) (quoting Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006); Hartford Fire Ins. Co. v. United States, 544 F.3d 1289, 1293 (Fed. Cir. 2008).

The Federal Circuit has looked to the "true nature" of a claim to determine if that claim is within the jurisdiction of the United States Court of Federal Claims. See Boaz Hous. Auth. v. United States, 994 F.3d 1359, 1367-68 (Fed. Cir. 2021) (applying a "true nature" analysis to "conclude that the true nature of the PHAs' [plaintiffs'] claim is one for compensatory damages and not equitable relief" (alteration added)); Pines Residential Treatment Ctr., Inc. v. United States, 444 F.3d 1379, 1380 (Fed. Cir. 2006) ("Regardless of a party's characterization of its claim, 'we look to the true nature of the action in determining the existence or not of jurisdiction.'" (quoting Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994), and citing Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1372 (Fed. Cir. 2005))); Tex. Peanut Farmers v. United States, 409 F.3d at 1373 (quoting Nat'l Ctr. for Mfg. Scis. v. United States, 114 F.3d 196, 199 (Fed. Cir. 1997) (quoting Katz v. Cisneros, 16 F.3d at 1207)). Other Judges of the United States Court of Federal Claims also have held that this court must look to "the true nature" of the action to determine jurisdiction. See Turner v. United States, 160 Fed. Cl. 242, 246 (2022) ("When analyzing a claim for subject-matter jurisdiction, the Court must determine 'the true nature of the claim' and not simply accept the party's assertion that the Court possesses jurisdiction." (citing Livingston v. Derwinski, 959 F.2d at 225)); Starrett v. United States, 158 Fed. Cl. 487, 492 (2022) ("[T]he obligation to look 'to the true nature of the action' applies to all federal courts in all causes of action." (quoting Maier v. Orr, 754 F.2d 973, 982 (Fed. Cir. 1985), and citing Hartford Fire Ins. Co. v. United States, 544 F.3d at 1293; Williams v. Sec'y of Navy, 787 F.2d at 557)), aff'd, No. 2022-1555, 2023 WL 152827 (Fed. Cir. Jan. 11, 2023); Alejandro v. United States, 158 Fed. Cl. 772, 773 (2022) (citing Livingston v. Derwinski, 959 F.2d at 224), aff'd, No. 2022-1591, 2022 WL 1676133 (Fed. Cir. May 26, 2022); Rodgers v. United States, 153 Fed. Cl. 538, 542 (2021) ("In deciding jurisdiction, this Court must look at 'the true nature of the action,' and cannot accept 'the mere recitation of a basis for jurisdiction by either party . . . .'" (ellipsis in original) (quoting Livingston v. Derwinski, 959 F.2d at 225)); Perry v. United States, 149 Fed. Cl. 1, 23 (2020) (quoting El-Shifa Pharm. Indus. Co. v. United States, 378 F.3d 1346, 1353-54 (Fed. Cir. 2004); Nat'l Ctr. for Mfg. Scis. v. United States, 114 F.3d at 199 (quoting Katz v. Cisneros, 16 F.3d at 1207), and citing Pines Residential Treatment Ctr., Inc. v. United States, 444 F.3d at 1380); Wash. Fed. v. United States, 149 Fed. Cl. 281 (2020) (citing Katz v. Cisneros, 16 F.3d at 1207 (citing Livingston v. Derwinski, 959 F.2d at 225)); Whiteford v. United States, 148 Fed. Cl. 111, 120 n.3 (2020) ("A court must '"look to the true nature of the action instead of merely relying on the plaintiff's characterization of the case"' to 'determin[e] the existence and grounds for [its] jurisdiction.'" (alterations in original) (quoting Doe v. United States, 372 F.3d 1308, 1315 (Fed. Cir. 2004) (quoting Katz v. Cisneros, 16 F.3d at 1207))); Colonna's Shipyard, Inc. v. United States, 146 Fed. Cl. 519, 523 (2020) (citing Katz v. Cisneros, 16 F.3d at 1207 (citing Livingston v.

Derwinski, 959 F.2d at 225)); Sandwich Isles Commc'ns, Inc. v. United States, 145 Fed. Cl. 566 (2019) ("[T]he Court 'must look to the true nature of [plaintiff's] claim, not how plaintiff characterize[s] it.'" (first alteration added) (quoting Folden v. United States, 379 F.3d 1344, 1359 n.13 (Fed. Cir. 2004), and citing Son Broad, Inc. v. United States, 42 Fed. Cl. 532, 534 (1998)); Acetris Health, LLC v. United States, 138 Fed. Cl. 43, 57 (2018) ("[T]he court is mindful that 'in determining the existence or not of jurisdiction,' it must look beyond plaintiff's characterization of its claims and ascertain 'the true nature' of plaintiff's suit." (quoting Katz v. Cisneros, 16 F.3d at 1207, and citing Norby Lumber Co. v. United States, 46 Fed. Cl. 47, 51 (2000))).

Defendant first argues that the court lacks jurisdiction over plaintiff's claim because the Tucker Act at 28 U.S.C. § 2501 (2018) "prescribes a six-year statute of limitations for claims arising out of the Tucker Act waiver of sovereign immunity" and, according to defendant, plaintiff filed his complaint more than six years after his cause of action accrued. (citing Martinez v. United States, 333 F.3d 1295, 1304 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004)). Plaintiff filed his complaint on October 27, 2022. This court's jurisdiction is expressly limited by 28 U.S.C. § 2501, which prescribes a six-year statute of limitations for filing claims arising under the Tucker Act's waiver of sovereign immunity. According to 28 U.S.C. § 2501: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d at 1354; see also Ideker Farms, Inc. v. United States, 71 F.4th 964, 974-75 (Fed. Cir. 2023); Jones v. United States, 30 F.4th 1094, 1100 (Fed. Cir. 2022) ("To fall within the jurisdiction of the Court of Federal Claims, a claim against the United States filed in that court must be 'filed within six years after such claim first accrues.'" (quoting 28 U.S.C. § 2501, and citing John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 132-35 (2008))), cert. denied, 143 S. Ct. 566, 214 L. Ed. 2d 336 (2023); Katzin v. United States, 908 F.3d 1350, 1358 (Fed. Cir. 2018) ("The Tucker Act statute of limitations is jurisdictional; we must therefore determine whether Plaintiffs' claims are timely before proceeding to the merits of the takings claim." (citing John R. Sand & Gravel Co. v. United States, 552 U.S. at 136)); Roseberry-Andrews v. United States, 144 Fed. Cl. 29, 33 (2019); Schnell v. United States, 115 Fed. Cl. 102, 104-5 (2014). The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues ""when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money."" Samish Indian Nation v. United States, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d at 1303); see also Ideker Farms, Inc. v. United States, 71 F.4th at 975 ("A claim accrues 'when all the events have occurred which fix the liability of the Government' and the plaintiff 'was or should have been aware' that the claim existed." (quoting Goodrich v. United States, 434 F.3d 1329, 1333 (Fed. Cir. 2006) (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988)))); Jones v. United States, 30 F.4th at 1100 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue . . . for [the plaintiff's] money.'"

(alteration and ellipsis in original) (quoting <u>Martinez v. United States</u>, 333 F.3d at 1303 (quoting <u>Nager Elec. Co. v. United States</u>, 177 Ct. Cl. 234, 239, 368 F.2d 847, 851 (1966), <u>motion denied</u>, 184 Ct. Cl. 390, 396 F.2d 977 (1968)))); <u>FloorPro, Inc. v. United States</u>, 680 F.3d 1377, 1381 (Fed. Cir. 2012); <u>Martinez v. United States</u>, 333 F.3d at 1303 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, <i>i.e.</i>, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" (quoting <u>Nager Elec. Co. v. United States</u>, 177 Ct. Cl. at 240); <u>Mildenberger v. United States</u>, 643 F.3d 938, 944–45 (Fed. Cir. 2011); <u>Hopland Band of Pomo Indians v. United States</u>, 855 F.2d at 1577; <u>see also</u> <u>Eden Isle Marina, Inc. v. United States</u>, 113 Fed. Cl. 372, 481 (2013); <u>Brizuela v. United States</u>, 103 Fed. Cl. 635, 639, <u>aff'd</u>, 492 F. App'x 97 (Fed. Cir. 2012), <u>cert. denied</u>, 568 U.S. 1251 (2013).

As summarized by the United States Court of Appeals for the Federal Circuit in <u>Holmes v. United States</u>:

> Section 2501 states that all claims that otherwise fall within the jurisdiction of the Court of Federal Claims "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A cause of action first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action. <u>Ingrum v. United States</u>, 560 F.3d 1311, 1314 (Fed. Cir. 2009). Generally, "[i]n the case of a breach of a contract, a cause of action accrues when the breach occurs." <u>Alder Terrace, Inc., v. United States</u>, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (quoting <u>Mfrs. Aircraft Ass'n v. United States</u>, 77 Ct. Cl. 481, 523, 1933 WL 1818 (1933)). Compliance with the statute of limitations is a jurisdictional requirement. <u>John R. Sand & Gravel Co. v. United States</u>, 552 U.S. 130, 133–34, 128 S. Ct. 750, 169 L. Ed. 2d 591 (2008).

<u>Holmes v. United States</u>, 657 F.3d 1303, 1317 (Fed. Cir. 2011) (alteration in original); <u>see also</u> <u>Parkwood Assocs. Ltd. P'ship v. United States</u>, 97 Fed. Cl. 809, 813-14 (2011) ("Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely." (citing <u>Alder Terrace, Inc. v. United States</u>, 161 F.3d 1372, 1377 (Fed. Cir. 1998))), <u>aff'd</u>, 465 F. App'x 952 (Fed. Cir. 2012); <u>Klamath Tribe Claims Comm. v. United States</u>, 97 Fed. Cl. 203, 209 (2011).

As the Federal Circuit explained in <u>John R. Sand & Gravel Co.</u>, with respect to the accrual of a takings claim under the Fifth Amendment:

> A takings claim accrues "'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" <u>Goodrich</u>, 434 F.3d at 1333 (quoting <u>Hopland</u>, 855 F.2d at 1577); <u>see also</u> <u>Bowen v. United States</u>, 292 F.3d 1383, 1385 (Fed. Cir. 2002). In addition, the claim only accrues if the plaintiff knew or should have known of the existence of the events fixing the government's liability. <u>Goodrich</u>, 434 F.3d

at 1333; <u>Hopland</u>, 855 F.2d at 1577; <u>Kinsey v. United States</u>, 852 F.2d 556, 557 n. *[13] (Fed. Cir. 1988).

<u>John R. Sand & Gravel Co. v. United States</u>, 457 F.3d at 1355-56 (alterations and footnote added). The Federal Circuit further clarified when a takings claim accrues in <u>Katzin v. United States</u>:

> A physical takings claim accrues when the scope of what is taken is fixed, <u>see</u> <u>Samish Indian Nation v. United States</u>, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting <u>Martinez v. United States</u>, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc)) (stating that a claim under § 2501 accrues "when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money"), and the plaintiff knew or should have known of the acts that fixed the government's alleged liability, <u>Hopland Band of Pomo Indians v. United States</u>, 855 F.2d 1573, 1577 (Fed. Cir. 1988).

<u>Katzin v. United States</u>, 908 F.3d at 1358. Moreover, the Federal Circuit also elaborated on the standard for the accrual of a takings claim in <u>Petro-Hunt, L.L.C. v. United States</u>, 862 F.3d 1370:

> A claim under the Fifth Amendment accrues when the taking action occurs. <u>Alliance of Descendants of Tex. Land Grants v. United States</u>, 37 F.3d 1478, 1481 (Fed. Cir. 1994) (citing <u>Steel Improvement & Forge Co. v. United States</u>, 355 F.2d 627, 631 (Ct. Cl. 1966)). Generally, such a taking occurs when the government deprives an owner of the use of his or her property. <u>See</u> <u>United States v. Causby</u>, 328 U.S. 256, 261–62, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946). A permanent takings claim arises when (1) all the events which fix the government's liability have occurred; and (2) the plaintiff knew or should have known about the existence of these events. <u>See</u> <u>Japanese War Notes Claimants Ass'n v. United States</u>, 373 F.2d 356, 358–59 (Ct. Cl.), <u>cert. denied</u>, 389 U.S. 971, 88 S. Ct. 466, 19 L. Ed. 2d 461 (1967).

<u>Petro-Hunt, L.L.C. v. United States</u>, 862 F.3d 1370, 1378 (Fed. Cir. 2017), <u>cert. denied</u>, 138 S. Ct. 1989 (2018); <u>see also</u> <u>Nw. La. Fish & Game Pres. Comm'n v. United States</u>, 446 F.3d 1285, 1289 (Fed. Cir. 2006) ("A taking occurs when governmental action deprives the owner of all or most of its property interest." (citing <u>United States v. Gen. Motors Corp.</u>, 323 U.S. 373, 378 (1945))); <u>Patkin Constr. Co. v. United States</u>, 153 Fed. Cl. 513, 532 (2021) ("A Fifth Amendment taking generally occurs when the government deprives an owner of the use and enjoyment of his or her property." (citing <u>United States v. Causby</u>, 328 U.S. at 261-62)).

Accrual of a claim is "'determined under an objective standard'" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of

---

[13] The single footnote in <u>Kinsey v. United States</u> is not identified by a number, but by an asterisk as correctly represented in <u>John R. Sand & Gravel Co. v. United States</u>.

action to accrue. FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996)). Plaintiff does not need to be aware of all relevant facts for a cause of action to accrue, the statute of limitations begins running once they are aware of sufficient facts to know that they have been wronged. See Osborn v. United States, 47 Fed. Cl. 224, 233 (2000). Moreover, "for purposes of determining when the statute of limitations begins to run, the 'proper focus' must be 'upon the time of the [defendant's] acts, not upon the time at which the *consequences* of the acts [become] most painful.'" Navajo Nation v. United States, 631 F.3d 1268, 1277 (Fed. Cir. 2011) (emphasis and alterations in original) (quoting Del. Sate Coll. v. Ricks, 449 U.S. 250, 258 (1980)). The Federal Circuit in Holmes v. United States offered further explanation, writing,

> the "accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." Id. [Holmes v. United States, 92 Fed. Cl. 311,] 319 [(2010)] (quoting Young v. United States, 529 F.3d 1380, 1384 (Fed. Cir. 2008)). For the accrual suspension rule to apply, the plaintiff "must either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." Young, 529 F.3d at 1384 (quoting Martinez v. United States, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc)).

Holmes v. United States, 657 F.3d at 1317 (alterations added; footnotes omitted).

Defendant argues that "[b]ecause the six-year period in which to bring suit is a condition on the waiver of sovereign immunity, the time bar is jurisdictional and strictly construed." (alteration added) (citing 28 U.S.C. § 2501; John R. Sand & Gravel Co. v. United States, 552 U.S. at 133-34; San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (citing Fallini v. United States, 56 F.3d at 1380)). According to defendant, "[i]t is well settled that a plaintiff's cause of action accrues when all the events fixing the Government's liability have occurred and the plaintiff knew, or should have known, of their existence." (alteration added) (citing FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Goodrich v. United States, 434 F.3d at 1333); Martinez v. United States, 333 F.3d at 1303). Regarding plaintiff's claims, defendant states that "Mr. Livingston's taking claim arises from the seizure of property from his on-base residence by the Army CID in May 2016, with him alleging that he was 'never charged with stealing most of the items seized by CID.'" Defendant emphasizes that, in the unsigned Standard Form 95 defendant included with its motion to dismiss, plaintiff "identified the specific search dates as May 12 and 13, 2016." Because "[s]ix years from May 13, 2016, would have been Friday, May 13, 2022," defendant, therefore, argues that "this [plaintiff's] action is *untimely* because it was filed on October 27, 2022, which is 5 months and 14 days after the jurisdictional deadline." (emphasis in original; alterations added). For this reason, defendant argues that this court should dismiss plaintiff's complaint as barred by the applicable jurisdictional statute of limitations.

In his response to defendant's motion to dismiss,[14] plaintiff argues that the "Army CID held Plaintiff's personal property until approximately 22 August 2020," and at that time, the Army CID "was finished with the personal property (primarily tools) and turned Plaintiff's property over to the United States Army for its use." Plaintiff asserts that "[a]t the time of the turn-over there was no law enforcement purpose for continuing to keep the property as evidence." (alteration added). According to plaintiff, the alleged "taking occurred in August 2020 well within the six-year statute of limitations." Moreover, plaintiff argues that his prior complaint filed in the United States Court of Federal Claims, Case No. 22-15C, "is irrelevant as they [defendant] admit the original claim was dismissed by the consent of both parties." (alteration added). Plaintiff argues that he has "demonstrated, by a preponderance of the evidence," the facts necessary to establish jurisdiction, including the allegations which plaintiff calls "undisputed," namely that "CID seized Plaintiff's property and held it for law enforcement purposes," and "in August 2020 turned that property over to his Army command for disposition as it was no longer needed by law enforcement," with the result that "[t]he items were returned for use by the command for a public purpose as tools." (alteration added). Plaintiff, therefore, argues that "[t]he court must accept the complaint's undisputed factual allegation and should construe them [sic] in the light most favorable to the Plaintiff[.]" (alterations added) (citing Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009)).

Upon review of plaintiff's complaint and response to the motion to dismiss, the court observes plaintiff makes multiple inconsistent statements with respect to the timing of plaintiff's takings claim. Plaintiff states that "the first claim occurred on 22 August 2020 or potentially as late as 15 June 2021," however, plaintiff also states that his property was "originally seized pursuant to the government police powers," which seizure was "by law enforcement in 2016." Plaintiff also asserts that "[t]here are two takings in this case. First, the taking by law enforcement (CID)." (alteration added). Plaintiff's complaint alleges that the seizure of his property occurred "in May 2016," when the Army CID "conducted a search of plaintiff's residence pursuant to a Search and Seizure Authorization looking for property 'identified as U.S. Military Equipment.'" According to plaintiff, it was "[d]uring the CID search" that "officers seized over 200 various tools and other property" which plaintiff alleges belonged to him. (alteration added). Moreover, plaintiff's Standard Form 95 request for compensation, submitted to the Army and attached to defendant's motion to dismiss, states that the seizure of plaintiff's property occurred on May 12 and 13, 2016. Plaintiff argues that, following the completion of his sentence, his property "was turned over to Plaintiff's Army command in 2020 for an entirely non-law enforcement purpose," which plaintiff characterizes as a "separate and succeeding act of the government." Relatedly, plaintiff argues:

> There has been no forfeiture action, and no in rem proceeding. The property was not retained as evidence or returned to its owner. Rather, CID gave the property to the Plaintiff's Army command in 2020. Plaintiff's Army command

---

[14] Plaintiff's response brief does not clearly differentiate between plaintiff's arguments with respect to the RCFC 12(b)(1) and 12(b)(6) bases for defendant's motion to dismiss.

kept this property and failed to return it to Plaintiff. This is an entirely new taking and this is exactly the kind of taking for a public purpose.

At another point in plaintiff's response to defendant's motion to dismiss, plaintiff argues:

> The cause of action in this case accrued when CID turned the plaintiffs' [sic] property over to command. A new cause of action then accrued when the command then kept the property allegedly for a potential appeal that did not exist. It then simply converted it for public use by the Army when all possible appeals were exhausted on 15 June 2021. Plaintiff knew of the existence of the events fixing government liability in June 2021, and six years have not passed.

(alteration added). With respect to the statute of limitations, plaintiff also argues that "at that time of the denial of review by the [United States Army] Court of Criminal Appeals, there were no law enforcement investigations, no pending appeals and no legal processes, reviews or petitions available to Plaintiff." (alteration added). Therefore, plaintiff argues that "[t]he case is final" because "it is clear there is nothing left to Plaintiff that might even mistakenly be considered an appeal." (alteration added). For these reasons, it is unclear from plaintiff's arguments how many separate actions by the government, and on which dates, plaintiff alleges effected a takings occurred.

Separate from the statute of limitations arguments, defendant also argues that the court should dismiss plaintiff's complaint because plaintiff's claim actually sounds in tort, over which this court does not possess jurisdiction. Defendant argues that although plaintiff specifically "does not claim in the instant action that the Army acted 'negligently and improperly' when it investigated him for his criminal activity and for its failure to return the Subject Tools, he *did* make those claims" in plaintiff's complaint in the earlier Case No. 22-15C.[15] (capitalization and emphasis in original). Defendant further argues for this court to take judicial notice of plaintiff's prior complaint in Case No. 22-15C because "'[j]udicial notice of public records is appropriate when considering a motion to dismiss,'" (alteration in original) (quoting Diversified Grp., Inc. v. United States, 123 Fed. Cl. 442, 453 n.7 (2015), aff'd, 841 F.3d 975 (Fed. Cir. 2016) (citing Sebastian v. United States, 185 F.3d 1368, 1374 (Fed. Cir. 1999))), and because "'[i]n deciding jurisdiction, this Court must look at "the true nature of the action," and cannot accept "the mere recitation of a basis for jurisdiction by either party . . . ."'" (alteration and ellipsis in original) (quoting Rodgers v. United States, 153 Fed. Cl. at 542 (quoting Livingston v. Derwinski, 959 F.2d at 225 (internal citations omitted)))).

---

[15] As discussed above, plaintiff's complaint in Case No. 22-15C and plaintiff's complaint in the above captioned case, Case No. 22-1602L, are nearly identical, with the exception that the earlier complaint did not specifically delineate whether it asserted a takings or a tort, but used tort-like language to set forth its cause of action, whereas the current complaint explicitly states that plaintiff is trying to assert a takings claim.

Defendant correctly argues that "the Tucker Act expressly excludes tort claims from this Court's jurisdiction." See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." (emphasis added)). As noted above, plaintiff's complaint filed in the case currently under review does not explicitly state that it alleges a tort. The current complaint in the above captioned case and plaintiff's earlier complaint filed in this court in the prior Case No. 22-15C, however, are very similar. Plaintiff's prior complaint contains nearly identical factual allegations to those set forth in plaintiff's complaint in the case currently under review. The operative difference between plaintiff's complaint in the above captioned case and the complaint in the earlier filed Case No. 22-15C is that the complaint in Case No. 22-15C asserted that the facts of plaintiff's claim amounted to "negligent" and "improper" action by the United States Army, language sounding in tort, and, therefore, a tort, while the complaint filed in the above captioned case purports to concede that the facts of plaintiff's claim amounted to an "authorized" seizure, a required concession for the court to find a taking. The Tucker Act specifically excludes tort claims from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. §1491(a); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993) (explaining that "tort cases are outside the jurisdiction of the Court of Federal Claims"); Straw v. United States, 4 F.4th 1358, 1361 (Fed. Cir. 2021) ("The Claims Court was also correct in holding that Mr. Straw's claim is in essence a tort claim, which is outside the jurisdiction of the Claims Court under the Tucker Act, Hercules Inc. v. United States, 516 U.S. 417, 423, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996)."); Rick's Mushroom Serv. Inc., v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort." (citing 28 U.S.C. § 1491(a)(1))); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort and this court lacks jurisdiction to hear tort claims." (alteration added)).

According to defendant, plaintiff chose and "made an administrative *tort* claim before the Army," which "[t]he Army expressly denied" as a claim under the Federal Tort Claims Act. (emphasis in original; alteration added). Moreover, defendant argues that "[t]he FTCA 'vests *only* the United States district courts with jurisdiction over tort claims against the United States—including those for loss of property.'" (emphasis in original; alteration added) (quoting Sepehry-Fard v. United States, No. 18-1118C, 2019 WL 4137497, at *4 (Fed. Cl. Aug. 30, 2019), aff'd, No. 2020-1100, 2020 WL 6375161 (Fed. Cir. July 23, 2020) (citing 28 U.S.C. § 1346(b)(1); United States Marine, Inc. v. United States, 722 F.3d 1360, 1366 (Fed. Cir. 2013))). Defendant further asserts that

> by merely omitting the words 'negligent' and 'improper' from this present complaint, Mr. Livingston attempts to minimize the true nature of his complaint. But Mr. Livingston cannot circumvent the FTCA (or this Court's jurisdiction), because the "'true nature' of [his] claim [sic[16]] sound in tort," <u>Rodgers</u>, 153 Fed. Cl. at 542, and is not a takings claim.

(first alteration in original; footnote added). Therefore, defendant argues that this court should dismiss plaintiff's complaint as alleging a tort claim over which this court lacks jurisdiction.

Plaintiff argues that "Defendant's assertion that this matter should be dismissed based at least in part upon a previous filing is misplaced" because "[b]oth parties agreed to stipulation of dismissal [of the earlier complaint in Case No. 22-15C]." (alterations added). Plaintiff argues that "[i]t is undisputed that in August 2020 law enforcement authorities stated there was no longer a law enforcement purpose to withhold the property," but that the Army "refused to return the property pending a potential appeal of the court-martial results." (alteration added). Plaintiff characterizes the Army's retention of the property pending an appeal of plaintiff's conviction as "clearly disingenuous," because, according to plaintiff, appeals in military cases do not exist, but only requests for review. Plaintiff states that

> [t]he Uniform Code of Military Justice, Article 69, permits the accused in certain cases to file for a review by the Judge Advocate General of the service concerned. This is not an appeal. If the servicemember is displeased with the results of the Article 69 review, then the servicemember is permitted to seek review by, as in this case, the United States Army Court of Criminal Appeals.

(alteration added). Plaintiff claims that after the Army Court of Criminal Appeals denied plaintiff's request for review on June 15, 2021, stating "there is no justification for Defendant to continue to withhold Plaintiff's property." Despite the absence of tort jurisdiction in this court, plaintiff confusingly argues in the case currently before this court that "Defendant's actions after 15 June 2021 could form an entirely new action in tort."

In the alternative, defendant argues that the court should dismiss plaintiff's complaint pursuant to RCFC 12(b)(6) for failure to state a claim. When examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2023); <u>see</u> <u>also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555. The United States Supreme Court has stated:

---

[16] The court notes that defendant incorrectly quotes <u>Rodgers v. United States</u> in its motion to dismiss. The correct quotation is: "The 'true nature' of Plaintiff's claims sound in tort." <u>Rodgers v. United States</u>, 153 Fed. Cl. at 542.

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid. [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216 pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim that relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (footnote and other citations omitted; omissions in original; first and fourth alterations added); see also Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); First Mortg. Corp. v. United States, 1961 F.3d 1331, 1339 (Fed. Cir. 2020); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied, (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)),

reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Christen v. United States, 133 Fed. Cl. 226, 229 (2017); Christian v. United States, 131 Fed. Cl. 134, 144 (2017); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Hous. Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, 579 F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726-27 (2010), appeal dismissed, 454 F. App'x 900 2011 WL 7429495 (Fed. Cir. 2011); Legal Aid Soc'y of N.Y. v. United States, 92 Fed. Cl. 285, 292, 298 n.14 (2010).

When deciding a case based on a failure to state a claim, the court "must accept as true the factual allegations in the complaint." Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. at 236 ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); Am. Bankers Ass'n v. United States, 932 F.3d at 1380 ("In reviewing a motion to dismiss, we accept as true the complaint's well-pled factual allegations; however, we are not required to accept the asserted legal conclusions." (citing Ashcroft v. Iqbal, 556 U.S. at 678)); Harris v. United States, 868 F.3d 1376, 1379 (Fed. Cir. 2017) (citing Call Henry, Inc. v. United States, 855 F.3d 1348, 1354 (Fed. Cir. 2017)); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

With respect to plaintiff's asserted takings claim, the Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Ark. Game & Fish Comm'n v. United States, 568 U.S. 23, 31 (2012) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)); see also Ideker Farms, Inc. v. United States, 71 F.4th at 978 ("We assess per se takings according to a straightforward rule: 'The government must pay for what it takes.' . . . This is true regardless of the size, invasiveness, or intermittent nature of the physical occupation." (ellipsis added) (quoting Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2071 (2021) (citing Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 322 (2002)), and citing Cedar Point Nursery v. Hassid, 141 S. Ct. at 2075; Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 438 (1982); United States v. Causby, 328 U.S. at 259); Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. at 49), abrogated on other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005)); Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123-24 (1978); Lingle v. Chevron U.S.A. Inc., 544 U.S. at 536; E. Enters.

v. Apfel, 524 U.S. 498, 522 (1998); Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. (13 Wall.) 166, 179 (1871) (citing principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified"); Reoforce, Inc. v. United States, 853 F.3d 1249, 1265 (Fed. Cir.), cert. denied, 138 S. Ct. 517 (2017); Rose Acre Farm, Inc. v. United States, 559 F.3d 1260, 1266 (Fed. Cir. 2009), cert. denied, 559 U.S. 935 (2010).

To succeed under the Fifth Amendment Takings Clause, a plaintiff has the burden of proof to demonstrate that the government took a private property interest for public use without just compensation. See St. Bernard Par. Gov't v. United States, 887 F.3d 1354, 1362 (Fed. Cir. 2018) ("It is well established that a takings plaintiff bears the burden of proof to establish that the government action caused the injury."), cert. denied, 139 S. Ct. 796, 202 L. Ed. 2d 571 (2019); Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (stating that the "'classic taking'" is one in which the government directly appropriates private property for its own use (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. at 324)), cert. denied, 579 U.S. 902 (2016); Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010). The government must be operating in its sovereign rather than in its proprietary capacity when it initiates a taking. See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008).

The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a takings of private property under the Fifth Amendment. See Jenkins v. United States, 71 F.4th 1367, 1373 (Fed. Cir. 2023); Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)) reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged taking. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. at 435 (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); see also McCutchen v. United States, 14 F.4th 1355, 1364 (Fed. Cir. 2021) (quoting Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008)), cert. denied, 143 S. Ct. 422 (2022); Welty v. United States, 926 F.3d 1319, 1323-24 (Fed. Cir. 2019) ("To maintain a cognizable claim for a Fifth Amendment taking, a plaintiff must establish that he possessed an enforceable property right." (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014-19 (1992))); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372 ("'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 535 U.S. 1077 (2002); and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992))); Air Pegasus of D.C., Inc. v. United States, 424 U.S. 1206, 1213 (Fed. Cir.) (stating that the court does not address the second step "without first identifying a cognizable property interest" (citing Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1381; and Conti v. United States, 291 F.3d

1334, 1340 (Fed. Cir. 2002))), reh'g denied and reh'g en banc denied (Fed. Cir. 2005); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "If the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003); and M & J Coal Co. v. United States, 47 F.3d at 1154); see also Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1329 (Fed. Cir.) (citing Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372), cert. denied, 567 U.S. 917 (2012). As the Supreme Court recently explained:

> The Takings Clause does not itself define property. Phillips v. Washington Legal Foundation, 524 U.S. 156, 164, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998). For that, the Court draws on "existing rules or understandings" about property rights. Ibid. (internal quotation marks omitted). State law is one important source. Ibid.; see also Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection, 560 U.S. 702, 707, 130 S. Ct. 2592, 177 L. Ed. 2d 184 (2010). But state law cannot be the only source. Otherwise, a State could "sidestep the Takings Clause by disavowing traditional property interests" in assets it wishes to appropriate. Phillips, 524 U.S., at 167, 118 S. Ct. 1925; see also Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 164, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980); Hall v. Meisner, 51 F.4th 185, 190 (CA6 2022) (Kethledge, J., for the Court) ("[T]he Takings Clause would be a dead letter if a state could simply exclude from its definition of property any interest that the state wished to take."). So we also look to "traditional property law principles," plus historical practice and this Court's precedents. Phillips, 524 U.S., at 165-168, 118 S. Ct. 1925; see, e.g., United States v. Causby, 328 U.S. 256, 260-267, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946); Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001-1004, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984).

Tyler v. Hennepin Cnty., Minn., 143 S. Ct. 1369, 1375 (2023). In addition to "'having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372). For the purpose of deciding defendant's motion to dismiss, the court accepts plaintiff's allegation that the seized property belonged to plaintiff at the time it was seized.

Defendant argues that plaintiff's property was seized pursuant to the government's police power and "it is well settled that the Government exercising its police power is not a 'public use' and cannot form the basis for a takings claim." According to defendant, "[t]he 'precedent' of the Federal Circuit 'is clear: "Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause."'" (alteration added) (quoting Kam-Almaz v. United States, 682 F.3d at 1371 (quoting AmeriSource Corp. v. United States, 525 F.3d 1149, 1153 (Fed. Cir. 2008))). Defendant states that "'[w]hen property has been seized pursuant to the criminal laws or subjected

to <u>in</u> <u>rem</u> forfeiture proceedings, such deprivations are not "takings" for which the owner is entitled to compensation.'" (alteration added) (quoting <u>Acadia Tech., Inc. v. United States</u>, 458 F.3d 1327, 1331 (Fed. Cir. 2006)). Defendant further argues that "'[w]hen private property is damaged incident to the exercise of the police power, such damage is not a taking for the public use, because the property has not been altered or turned over for public benefit,'" (alteration in original) (quoting <u>Bachmann v. United States</u>, 134 Fed. Cl. 694, 696 (2017)), but rather that "'both the owner of the property and the public can be said to be benefited by the enforcement of criminal laws and cessation of the criminal activity.'" (quoting <u>Nat'l Bd. of Young Men's Christian Ass'ns v. United States</u>, 395 U.S. 85, 92-93 (1969)). Defendant further argues that "[o]nce property is seized in a criminal matter, the 'owner of the property has a due process right to have the government either return the property or initiate forfeiture proceedings without unreasonable delay,'" but "[i]f there is a delay in the government initiating forfeiture proceedings, then the *owner* may institute an action in Federal *district court*." (emphasis in original; alterations added) (citing <u>Acadia Tech., Inc. v. United States</u>, 458 F.3d at 1333-34 (citing <u>United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency</u>, 461 U.S. 555, 566 (1983))).

Defendant also argues that, to state a claim for a Fifth Amendment takings, "the 'claimant must concede the validity of the government action which is the basis of the taking claim.'" (quoting <u>Tabb Lakes, Ltd. v. United States</u>, 10 F.3d 796, 802-03 (Fed. Cir. 1993), and citing <u>Skillo v. United States</u>, 68 Fed. Cl. 734, 743 n.14 (2004)[17]). Defendant argues that plaintiff "concedes that '[t]he property in this case was seized as evidence in a criminal investigation and has not been returned to [him].'" (alterations in original). Defendant emphasizes that whereas plaintiff's current complaint in the above captioned case specifically "argues that the property was a 'taking pursuant to a valid warrant' and 'an authorized act of government officials,'" plaintiff's prior complaint in Case No. 22-15C "characterized the same actions as unlawful and improper." (citing <u>Diversified Grp., Inc. v. United States</u>, 123 Fed. Cl. at 453 n.7). Defendant also compares plaintiff's prior complaint in Case No. 22-15C to plaintiff's Standard Form 95, which plaintiff submitted to the Army, and, according to defendant, plaintiff used tort-like language in the Standard Form 95 and "claimed that his personal property was either '*unlawfully* seized or *damaged* by the government.'" (emphasis in original). Defendant also rejects plaintiff's allegation "that he [plaintiff] was 'never charged with stealing most of the items seized by CID' and acquitted of the larceny charges covering some of the Subject Tools," as "meritless." (alteration added). Defendant quotes the decision in <u>Bachmann v. United States</u> to argue that "'the innocence of the property owner [does not] convert what is otherwise the proper, non-compensable exercise of the police power into a Fifth Amendment taking, even when that property is subject to forfeiture.'" (alteration in original) (quoting <u>Bachmann v. United States</u>, 134 Fed. Cl. at 698 (citing <u>Calero-Toledo v. Pearson Yacht Leasing Co.</u>, 416 U.S. 663, 680-85 (1974))).

---

[17] Defendant incorrectly cites the year that <u>Skillo v. United States</u> was published as 2004; <u>Skillo v. United States</u> was published in 2005. <u>See generally</u> <u>Skillo v. United States</u>, 68 Fed. Cl. 734 (2005).

Plaintiff responds by arguing in plaintiff's current case before this court that defendant's citation to Kam-Almaz v. United States, 682 F.3d 1364, is not applicable because his "property was not 'retained' pursuant to police powers," but rather "[t]he Army command simply kept it and converted it to public use." (alteration added). Plaintiff further argues that defendant's citation to Acadia Technology, Inc. v. United States, 458 F.3d 1327, is not applicable because "[t]here has been no forfeiture action, and no in rem proceeding," and "[t]he property was not retained as evidence or returned to its owner." (alterations added). Plaintiff quotes Acadia Technology to argue that "Plaintiff in this case 'has a due process right to either the return of is [sic] property or the government must initiate a forfeiture proceeding without unreasonable delay,'" (alteration added) (quoting id. at 1333-34), but, according to plaintiff, "Defendant did neither of these things."

As described above, the accrual of plaintiff's claim for the purposes of determining whether plaintiff's claim was timely filed is complicated by plaintiff's own filings. As discussed above, the Tucker Act requires that claims must be filed in the United States Court of Federal Claims within six years of their accrual, and failure timely to file a claim deprives this court of jurisdiction. See 28 U.S.C. § 2501. A claim against the United States in this court "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit," Jones v. United States, 30 F.4th at 1100, and a takings claim "accrues when the scope of what is taken is fixed" and when "the plaintiff knew or should have known of the acts that fixed the government's alleged liability," Katzin v. United States, 908 F.3d at 1358, which "occurs when the government deprives an owner of the use of his or her property." Petro-Hunt, L.L.C. v. United States, 862 F.3d at 1378.

As also indicated above, plaintiff disputes defendant's assertions with respect to the time of the accrual of plaintiff's claim, but plaintiff alleges, inconsistently, various dates for when his claim accrued. Plaintiff argues that his claim did not accrue upon the initial seizure of his property in May 2016,[18] but at some later date, variously claimed by plaintiff to be August 22, 2020, the date when plaintiff's seized property was allegedly transferred to the Army command, or as late as June 15, 2021, the date when the Army Court of Criminal Appeals denied plaintiff's request for review. Even if May 2016 was not the accrual date of a compensable taking, plaintiff argues that the Army's refusal to return plaintiff's property, the "subject tools," after his acquittal of all charges except one charge for theft of a motor vehicle, is compensable because plaintiff's property was no longer retained pursuant to the police power.

The United States Supreme Court in Bennis v. Michigan, 516 U.S. 442 (1996), addressed the application of the police power to takings claims when considering the

---

[18] When evaluating defendant's motion to dismiss, the court relies on the allegation in plaintiff's complaint, and repeated in plaintiff's response to the motion to dismiss, that the seizure of plaintiff's property occurred on unspecified days in May 2016. As noted above, however, plaintiff's Standard Form 95 stated that the seizure of plaintiff's property occurred on May 12 and 13, 2016. An unsigned version of plaintiff's Standard Form 95 was filed with the court by defendant as an attachment to its motion to dismiss and neither party has challenged the accuracy of that document.

takings claim of a petitioner whose car had been forfeited by order of a Michigan court after the petitioner's husband, who was a joint owner of the car, "engaged in sexual activity with a prostitute" in the car. See id. at 443. In Bennis, the Supreme Court determined that the petitioner had no compensable takings and explained that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." Id. at 452 (alteration added) (citing United States v. Fuller, 409 U.S. 488, 492 (1973); United States v. Rands, 389 U.S. 121, 125 (1967)).

The United States Court of Appeals for the Federal Circuit in Acadia Technology, Inc. v. United States, 458 F.3d 1327, relied on the Supreme Court's Bennis decision to explain that "[w]hen property has been seized pursuant to the criminal laws or subjected to in rem forfeiture proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation." Id. at 1331 (alteration added) (citing Bennis v. Mich., 516 U.S. at 452-53; Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. at 680; Van Oster v. Kan., 272 U.S. 465, 468 (1926)). The Federal Circuit in Acadia further explained that "[t]he same rule applies even if the property is seized as evidence in a criminal investigation or as the suspected instrumentality of a crime, but is ultimately returned to the owner either because the government does not pursue forfeiture proceedings or because the owner prevails in a forfeiture action." Id. at 1331-32 (alteration added) (citing United States v. $7,990.00 in U.S. Currency, 170 F.3d 843, 845-46 (8th Cir. 1999); United States v. One (1) 1979 Cadillac Coupe De Ville VIN 6D4799266999, 833 F.2d 994, 1000 (Fed. Cir. 1987); United States v. Various Gambling Devices, 478 F.2d 1194, 1198 (5th Cir. 1973); Seay v. United States, 61 Fed. Cl. 32, 35 (2004); Crocker v. United States, 37 Fed. Cl. 191, 195-96, aff'd, 125 F.3d 1475 (Fed. Cir. 1997)).

In AmeriSource Corp. v. United States, the Federal Circuit plainly stated: "Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." AmeriSource Corp. v. United States, 525 F.3d at 1153. The AmeriSource Corp. court further explained the impact of the Supreme Court's Bennis decision, and stated that Bennis affirmed that with respect to a takings claim "involving governmental seizure of property for law enforcement purposes, the inquiry remains focused on the character of the government action, not the culpability or innocence of the property holder." AmeriSource Corp. v. United States, 525 F.3d at 1154. Moreover, the Federal Circuit in AmeriSource Corp. wrote:

> Bennis suggests that so long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment. [Bennis v. Mich., 516 U.S. at 453]. The innocence of the property owner does not factor into the determination.

AmeriSource Corp. v. United States, 525 F.3d at 1154 (alteration added) (citing Bennis v. Mich., 516 U.S. at 453; United States v. One 1979 Cadillac Coupe De Ville 6D4799266999, 833 F.2d at 1000). According to the Federal Circuit in AmeriSource, "[o]nce the government has lawfully seized property to be used as evidence in a criminal

prosecution, it has wide latitude to retain it so long as the investigation continues, regardless of the effect on that property." Id. (alteration added). The Federal Circuit also stated:

> As expansive as the police power may be, it is not without limit. The limits, however, are largely imposed by the Due Process Clause. "Where public officials 'unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity,' the true owner may 'bring his possessory action to reclaim that which is wrongfully withheld.'"

Id. at 1154-55 (quoting Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 308 (1967) (quoting Land v. Dollar, 330 U.S. 731, 738 (1947))).

In Kam-Almaz v. United States, 682 F.3d 1364, the Federal Circuit considered whether the United States Court of Federal Claims was deprived of jurisdiction over a takings claim when the plaintiff had his laptop seized by United States Immigration and Customs Enforcement at an airport and, despite the laptop's eventual return to the plaintiff, during the detention the laptop's "hard drive failed, destroying much of Kam-Almaz's business software." See id. at 1366. The Federal Circuit in Kam-Almaz stated that its "precedent is clear: 'Property seized and retained pursuant to the police power is not taken for a "public use" in the context of the Takings Clause.'" Id. at 1371 (quoting AmeriSource Corp. v. United States, 525 F.3d at 1153, and citing Acadia Tech., Inc. v. United States, 458 F.3d at 1331-32). Moreover, the Federal Circuit in Kam-Almaz relied on the Supreme Court's decision in Bennis to reject that a takings claim exists when a plaintiff's property is seized for law enforcement purposes, but the plaintiff is found innocent. The Kam-Almaz court wrote:

> In Bennis[ v. Michigan], the Court held that Mrs. Bennis, an innocent wife who had a property interest in a car that was forfeited after her husband used it in the commission of a crime, did not have a claim for a compensable taking. 516 U.S. [442,] 452–53, 116 S. Ct. 994 [(1996)]. Mrs. Bennis's innocence did not factor into the Court's takings analysis. Rather, the Court held that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." Id. at 452, 116 S. Ct. 994. In AmeriSource, we summarized the Court's holding in Bennis as follows: "[in] case[s] involving governmental seizure of property for law enforcement purposes, the [takings] inquiry remains focused on the character of the government action, not the culpability or innocence of the property holder." 525 F.3d at 1154. Accordingly, Kam–Almaz's innocence does not convert ICE's seizure into a compensable taking under the Fifth Amendment.

Kam-Almaz v. United States, 682 F.3d at 1371-72 (first three alterations added). The Federal Circuit in Kam-Almaz further reaffirmed the Bennis and AmeriSource interpretation of police power seizures:

> Lawful seizures performed pursuant to such authority necessarily fall within the government's power to police the border. The "police powers . . . are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions." The License Cases, 46 U.S. 504, 583, 5 How. 504, 12 L. Ed. 256 (1847) (opinion of Taney, C.J.). As we have noted, "[a]lthough the precise contours of the principle are difficult to discern, it is clear that the police power encompasses the government's ability to seize and retain property to be used as evidence in a criminal prosecution." AmeriSource, 525 F.3d at 1153.

Kam-Almaz v. United States, 682 F.3d at 1372 (alteration and ellipsis in original); see also Sanganza v. United States, 164 Fed. Cl. 188, 198 (2023) ("[T]o the extent Defendant lawfully seized Plaintiff's property in connection with his criminal conviction and sentence, that seizure is not a compensable Fifth Amendment taking as a matter of law." (alteration added) (citing Acadia Tech., Inc. v. United States, 458 F.3d at 1331; Kaetz v. United States, 158 Fed. Cl. 422, 430 (2022))); Myles v. United States, 152 Fed. Cl. 448, 454 (2021) ("Property seizures in the course of a criminal investigation, in other words, are not a valid basis for a takings claim." (citing Acadia Tech., Inc. v. United States, 458 F.3d at 1331)); Bachmann v. United States, 134 Fed. Cl. at 696 ("[W]hen law enforcement officials seize and retain property as the suspected instrumentality or evidence of a crime, that property 'is not taken for a "public use" within the context of the Takings Clause.'" (alteration added) (quoting AmeriSource Corp. v. United States, 525 F.3d at 1153)); Ramos v. United States, 112 Fed. Cl. 79, 86 (2013) ("Because the property confiscated from Mr. Ramos was seized pursuant to lawful criminal proceedings and thus was not taken for public use, its loss, under the precedent of this circuit, cannot give rise to a takings claim." (citing Acadia Tech., Inc. v. United States, 458 F.3d at 1332)). In Alde, S.A. v. United States, another Judge of the United States Court of Federal Claims explained the distinction between compensable takings and seizures pursuant to the police power:

> There is a difference between government action that constitutes an exercise of the police power and action that constitutes a compensable taking. If the Government acts to secure a benefit for the public, a taking arises. Government action taken to prevent harm to the public is an exercise of the police power. Scope Enterprises[, Ltd. v. United States], 18 Cl. Ct. [875,] 883 [(1989)]. Government action aimed at protecting the life, health, and property of its citizens "traditionally has constituted a non-compensable exercise of the Government's police power."

Alde, S.A. v. United States, 28 Fed. Cl. 26, 34 (1993) (alterations added) (quoting Jarboe-Lackey Feedlots, Inc. v. United States, 7 Cl. Ct. 329, 338-39 (1985) (citing Mugler v. Kansas, 123 U.S. 623 (1887))).

After the parties had fully briefed defendant's motion to dismiss, on June 28, 2023, the United States Court of Appeals for the Federal Circuit issued a decision in Jenkins v.

United States, 71 F.4th 1367. On appeal from the United States District Court for the District of North Dakota, the Federal Circuit in Jenkins considered a claim for just compensation for a claimed takings of two cars seized "pursuant to a criminal investigation," for which the claimant "argue[d] the government is liable for failing to return them after completion of the criminal investigation, transferring possession of the cars to an impound lot, and selling them or authorizing their sale by the impound lot." Id. at 1370 (alteration added). The United States Drug Enforcement Agency had seized the Jenkins claimant's cars and sent them to an impound lot, after which the cars were searched pursuant to a search warrant. See id. The Federal Circuit explained that the claimant "pled guilty to a drug conspiracy charge," and later, "between Mr. Jenkins' guilty plea and his sentencing, the government contends that the hold on the vehicles was released." Id. After the cars had "been unclaimed for 45 days," the impound lot sold the cars. See id. at 1371. According to the Federal Circuit, the claimant "filed a motion in his criminal case for the return of the cars pursuant to Federal Rule of Criminal Procedure 41(g),"[19] but the District Court "dismissed Mr. Jenkins' motion as moot in light of the government's indication that his property would be returned." Jenkins v. United States, 71 F.4th at 1371. The Jenkins claimant subsequently sued the United States in the District of North Dakota for $10,000.00 under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (2018), asserting a Fifth Amendment taking claim and a due process claim. See Jenkins v. United States, 71 F.4th at 1371. After the claimant's due process claim was dismissed for lack of jurisdiction,[20] the United States moved for, and received, summary judgment on the grounds that "'[t]he Fifth Amendment takings clause does not encompass a claim for just compensation for property seized under governmental police power under the facts of this case.'" Id. at 1372 (alteration in original).

Mr. Jenkins appealed his case to the United States Court of Appeals for the Eighth Circuit, which transferred the case to the United States Court of Appeals for the Federal Circuit. The Federal Circuit, upon review of the case, explained that Jenkins "presents difficult questions that can occur when the government seizes property in connection with criminal proceedings and retains the property after proceedings have concluded," and while "[o]ther circuits have addressed some of these questions," Jenkins presented issues which "are matters of first impression for our court." Id. (alteration added). The Federal Circuit addressed the extent of the government's immunity from takings liability pursuant to the police power:

> To be sure, as the government points out, we have consistently held that the government is not liable under the takings clause for property seizure

---

[19] Rule 41(g) of the Federal Rules of Criminal Procedure provides: "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g) (2023).

[20] On appeal, the Federal Circuit in Jenkins agreed that "[t]he district court did not err in dismissing this due process claim for lack of jurisdiction," but nevertheless stated "on remand Jenkins may seek leave to amend to assert an illegal exaction claim." Jenkins v. United States, 71 F.4th at 1377 (alteration added).

during a criminal investigation or for damage to such property in its custody, even if the decrease in value renders the property essentially worthless. None of these cases, however, suggests or even considers whether the police power exception immunizes the government from liability for failing to return property legally seized after the government's need to retain the property ends.

While the United States' police power may insulate it from liability for an initial seizure, there is no police power exception that insulates the United States from takings liability for the period after seized property is no longer needed for criminal proceedings. In this respect, we agree with the Third Circuit in Frein v. Pennsylvania State Police that "[t]hough valid warrants immunize officers who stay within their scope, they are not blank checks," and once criminal proceedings have concluded the government "needs some justification" to retain the property without compensation. 47 F.4th 247, 252–53 (3d Cir. 2022). Even when the initial seizure and retention of property is properly done pursuant to the police power, the police power does not insulate the government from liability for a taking if the property is not returned after the government interest in retaining the property ceases. The district court erred in concluding that the legitimacy of the initial seizure precluded liability for failure to return the property.

Jenkins v. United States, 71 F.4th at 1373-74 (alteration in original; footnotes omitted). In a footnote to the foregoing quote, the Federal Circuit further explained: "There is, of course, no takings liability when the government assumes ownership of property pursuant to valid and lawful forfeiture proceedings." Id. at 1374 n.4 (citing Bennis v. Michigan, 516 U.S. at 452). The Federal Circuit continued: "It is undisputed that there was no forfeiture proceeding in this case." Id. The Federal Circuit in Jenkins continued: "The law is established that there is no takings liability for the government's temporary seizure and holding of property in conjunction with, and during the pendency of, a criminal case or civil forfeiture," id. at 1374 (citing AmeriSource Corp. v. United States, 525 F.3d at 1154; Acadia Tech., Inc. v. United States, 458 F.3d at 1332), and explained that "[t]here is no takings liability for government retention of property if the party whose property was seized fails to and is required to exhaust remedies provided by the federal government." Id. (alteration added). The Federal Circuit emphasized that, although the claimant filed a motion pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, "he failed to do so at a time when the government allegedly still had possession of his vehicles through its alleged agent, the impound lot." Jenkins v. United States, 71 F.4th at 1375. Moreover, the Federal Circuit explained, while there was an open question "whether the Rule 41(g) remedy is a mandatory remedy," the claimant had "contend[ed] that, as a practical matter, there was no Rule 41(g) remedy available to him because the government never notified him that the cars were no longer needed for the criminal investigation or that the cars were ready for pickup." Jenkins v. United States, 71 F.4th at 1375 (alteration added). Because of "the ambiguity of the record in this respect," the Federal Circuit remanded to the District Court for the District of North Dakota the issues of "whether the Rule 41(g)

remedy was required or unavailable," to be "addressed on a more complete record." Jenkins v. United States, 71 F.4th at 1375.

The Federal Circuit also addressed two additional governmental actions in Jenkins. The Federal Circuit explained that "[w]hen and if the government surrendered possession or control over the vehicles to the impound lot, there was no longer a Rule 41(g) remedy because Rule 41(g) does not allow for monetary damages." Jenkins v. United States, 71 F.4th at 1375 (alteration added) (citing Jackson v. United States, 526 F.3d 394, 398 (8th Cir. 2008)). In a footnote to the foregoing quotation, the Federal Circuit observed:

> Some circuits have suggested that there is an equitable remedy under Rule 41, see Mora [v. United States], 955 F.2d [156,] 159–60 [(2d. Cir. 1992)]; [United States v.] Martinson, 809 F.2d [1364,] 1367–69 [(9th Cir. 1987)], or a remedy under the Federal Tort Claims Act, see Mora, 955 F.2d at 160; United States v. Hall, 269 F.3d 940, 943 (8th Cir. 2001), if the government fails to return property lawfully in its possession. Neither party has addressed that possibility here, nor do we.

Jenkins v. United States, 71 F.4th at 1375 n.5 (alterations added). According to the Federal Circuit "[i]f and when the government ceased having possession of or control over the vehicles, it appears that Mr. Jenkins' only remedy (putting aside the due process clause) would be a takings claim under the Tucker Act or Little Tucker Act," and, moreover, "there is no exhaustion requirement for a takings claim once the government ceased to have possession or control of the vehicles since the Rule 41(g) remedy no longer existed." Jenkins v. United States, 71 F.4th at 1375 (alteration added) (citing United States v. Hall, 269 F.3d at 943).

Further, with respect to "the government's alleged action in selling the vehicles (through its alleged agent the impound lot) or authorizing the sale of the vehicles by the impound lot," the Federal Circuit explained that "[i]f the cars were abandoned by Mr. Jenkins, there can be no takings liability for their sale. It is well established that a person cannot be said to have been deprived of property they have abandoned, and thus that the government has no takings liability for taking abandoned property." Id. at 1375-76 (alteration added) (citing Tyler v. Hennepin Cnty., Minn., 143 S. Ct. at 1380-81; Texaco, Inc. v. Short, 454 U.S. 516, 526, 530 (1982); Cerjeski v. Zoeller, 735 F.3d 577, 581 (7th Cir. 2013)). The Federal Circuit in Jenkins did not resolve the question of abandonment because questions of "potential failure to provide notice" remained. Id. at 1377. The Federal Circuit explained it would "reserve for the future" the "numerous difficult questions" presented by the claimant's takings claim and vacated and remanded the takings claim for further proceedings in the District of North Dakota. See id.

Following issuance of the Jenkins decision, this court ordered supplemental briefing to address the impact of the Federal Circuit's Jenkins decision on defendant's motion to dismiss in the case brought by Mr. Livingston. With respect to defendant's argument that the police power insulates the United States from takings liability, plaintiff reiterates his argument that the "Army CID held Plaintiff's personal property until

approximately 22 August 2020, at which time it turned his personal property over to Plaintiff's former United States Army command," at the time when the Army CID "was finished with the personal property" and "there was no law enforcement purpose for continuing to keep the property as evidence." According to plaintiff, "[t]he United States Army received the property for its use, and despite repeated demands, the Army refused to return Plaintiff's property to him." (alteration added). Plaintiff further reiterates that "[a]ll charges alleging theft of government property, including all the items that form the subject of this complaint, were either dismissed, not charged, or Plaintiff was found not guilty after trial." (alteration added). Plaintiff claims that in his case,

> as in Jenkins, Plaintiff's property was seized from Plaintiff under the police power and never returned to Plaintiff even after law enforcement proceedings were complete. The major differences between Jenkins and Mr. Livingston's case is [sic] that Mr. Livingston was exonerated, and the government still retains Mr. Livingston's seized property to this day.

(alteration added).

In its response to plaintiff's arguments about the applicability of the Jenkins case, in its supplemental brief, defendant argues that "Jenkins re-enforces [sic] why our motion to dismiss should be granted." (alteration added). Defendant's supplemental brief states that "Jenkins plainly has no effect on our argument that Mr. Livingston's complaint is untimely," and argues that "Jenkins is relevant to this case only to the extent that it confirms the requirement of exhaustion of mandatory administrative remedies, even if property has been seized pursuant to the police power." (citing Jenkins v. United States, 71 F.4th at 1374-75), or stated otherwise, "[t]he Federal Circuit unequivocally affirmed that when a party has an administrative remedy available to him, he must pursue it." Defendant's supplemental brief states that "in this case, Mr. Livingston appropriately exhausted the Federal remedy available to him and submitted an administrative tort claim to the Army, claiming that his personal property was either 'unlawfully seized' or damaged by the Army." (alteration added).

Defendant claims that "[t]here is no doubt that Mr. Livingston exhausted his required FTCA administrative remedies before filing his second lawsuit in this Court [Case No. 22-1602C], and we have never argued that he failed to do so." (alterations added). According to defendant, the issue raised by Jenkins in this case is "what happens if Mr. Livingston appropriately exhausted his required FTCA administrative remedies and the Army denied his claim?" Defendant argues that Jenkins "can offer no answer" which "is because once the Army issued the final denial of his tort claim on June 9, 2021, Mr. Livingston's _sole_ avenue for appeal was to file a claim in Federal district court within six months from the date of the denial." (emphasis in original) (citing 28 U.S.C. § 2401(b); 28 C.F.R. § 14.9(a)). According to defendant, however, plaintiff "failed to do so" and "his claim should now be forever barred." In support of its argument, defendant cites 28 U.S.C. § 2401(b), which requires any "tort claim against the United States" to be brought "within six months" of final denial by the agency, and 28 C.F.R. § 14.9(a), which states that, for

an FTCA claim, a claimant "may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification."

In a reply to defendant's supplemental brief, plaintiff argues that defendant "claims this court lacks jurisdiction because of ambiguities in the Jenkins holding, and specifically, the ambiguity regarding whether under Jenkins the plaintiff was required to file a [Fed. R. Crim. P.] Rule 41(g) motion." (alteration added). According to plaintiff, "there is no Rule 41(g) under the Uniform Code of Military Justice. This is n [sic] available remedy in military courts-martial," and, further, "the idea that in order for the case to apply it must have mentioned every type of remedy available to plaintiff in order to secure relief is nonsensical." (alterations added). Plaintiff characterizes defendant's position with respect to Jenkins as, "because Mr. Livingston attempted an administrative remedy, he is barred from seeking relief with this court," and, "because he exercised his right to seek the return of his property, this court is deprived of jurisdiction." Plaintiff argues that Jenkins set forth a "requirement" that "the plaintiff simply exhaust all remedies before seeking relief" with respect to seized property. Plaintiff further argues that the ambiguity with respect to whether Rule 41(g) of the Federal Rules of Criminal Procedure is mandatory "is wholly inapplicable" to plaintiff's case and, therefore, "Defendant cannot hide behind ambiguities to avoid the clear intent of the court that the government be responsible to its citizens when it takes a citizen's property and holds it past the time it needs to for any legitimate purpose."

As explained above, plaintiff concedes in his complaint that his property was "originally seized pursuant to the government police powers." Therefore, the Army at the time of the seizure had "lawfully acquired" his property, see Bennis v. Michigan, 516 U.S. at 452, which plaintiff characterizes as "pursuant to a valid warrant" and "pursuant to a valid military search and seizure authorization," when the Army CID searched plaintiff's house in May 2016. A seizure of property "pursuant to the criminal laws" does not effect a "'takings' for which the owner is entitled to compensation." Acadia Tech., Inc. v. United States, 458 F.3d at 1331 (citing Bennis v. Mich., 516 U.S. at 452-53; Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. at 680; Van Oster v. Kan., 272 U.S. at 468). According to the governing law, the seizure of the "subject tools" did not effect a takings at the time of the initial seizure because the seizure occurred during the exercise of the government's police power.

As discussed above, the Federal Circuit stated in Jenkins, that "[e]ven when the initial seizure and retention of property is properly done pursuant to the police power, the police power does not insulate the government from liability for a taking if the property is not returned after the government interest in retaining the property ceases." Jenkins v. United States, 71 F.4th at 1373-74 (alteration added). This statement by the Federal Circuit appears to constitute a limitation on the police power doctrine in takings law, not previously explicitly expressed. The Federal Circuit approvingly cited to the United States Court of Appeals for the Third Circuit's decision in Frein v. Pennsylvania State Police, 47 F.4th 247, for the proposition that "once criminal proceedings have concluded the government 'needs some justification' to retain the property without compensation."

Jenkins v. United States, 71 F.4th at 1373 (quoting Frein v. Pa. St. Police, 47 F.4th at 252-53).[21]

The record before the court indicates that while the Army CID searched plaintiff's house and seized his property in May 2016 in an exercise of the police power pursuant to a criminal investigation and prosecution, ultimately plaintiff was not convicted of a crime related to the seized property at issue in the above captioned case. Plaintiff's only conviction related to theft of a motor vehicle, the claim for which is not included in the list of items regarding which plaintiff alleges a taking. Subsequent to the criminal proceedings against plaintiff, the Army also never brought a forfeiture action against plaintiff in order to take title to the seized property. Accordingly, under the Federal Circuit's holding in Jenkins, the Army may not have had a police powers justification for retaining plaintiff's property after the conclusion of plaintiff's criminal case, as it did. See Jenkins v. United States, 71 F.4th at 1373-74. Plaintiff, however, did complete the administrative process seeking returning of the subject tools, as plaintiff filled out and filed a Standard Form 95 administrative request for compensation. The Army denied plaintiff's Standard Form 95 administrative request for compensation for his seized property and plaintiff's administrative request for reconsideration of the June 9, 2021 Denial.

Accordingly, it is insufficient to argue, as defendant does, that because the initial seizure of plaintiff's property was pursuant to the police power, the Army was totally

---

[21] In the passage cited by the Federal Circuit in Jenkins, the Third Circuit in Frein stated:

> If the government wants to keep the property after the conviction becomes final, it needs some justification. That is why it may keep contraband, property that is illegal to own. It may also keep the proceeds of the crime or the instrumentalities used to commit it. See 21 U.S.C. § 853; Kaley v. United States, 571 U.S. 320, 323, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014). But it may do that only after going through one of two processes. First, it may use criminal forfeiture to get the proceeds or instrumentalities as "an element of the sentence imposed *following conviction*." Libretti v. United States, 516 U.S. 29, 38–39, 116 S. Ct. 356, 133 L. Ed. 2d 271 (1995) (second word of emphasis added). In other words, it must first prove the owner's guilt at trial. United States v. Sandini, 816 F.2d 869, 873 (3d Cir. 1987).

> Or the government may use civil forfeiture to take the property even without convicting the owner. See United States v. U.S. Currency in the Amount of $145,139.00, 18 F.3d 73, 75 (2d Cir. 1994). But even then, the government must have at least probable cause to link the property to the crime. See, e.g., United States v. $10,700.00, 258 F.3d 215, 222 (3d Cir. 2001) (analyzing 19 U.S.C. § 1615).

Frein v. Pa. St. Police, 47 F.4th at 253 (emphasis in original). There is no indication in the record currently before the court in the above captioned case that the Army initiated either a criminal or a civil forfeiture proceeding against plaintiff's property.

insulated from takings liability when defendant retained the property. Rather, because the Army had no police power justification to retain plaintiff's property after plaintiff's criminal case had concluded, when plaintiff's Standard Form 95 request for compensation was denied on June 9, 2021, the Army could have become liable for a claim for just compensation in this court by failing to pay for the property it had seized. Therefore, the date of the Army's denial of plaintiff's Standard Form 95, June 9, 2021, is the date on which plaintiff's claim for compensation for his seized property began to run. The May 2016 timeframe identified in defendant's argument that "Mr. Livingston's taking claim arises from the seizure of property from his on-base residence by the Army CID in May 2016," is not the proper date for the statute of limitations to begin to run because the seizure of the property did not effect a taking at the time of the initial seizure in May 2016, as the seizure occurred during the exercise of the government's police power.

As explained above, the statute at 28 U.S.C. § 2501 gives the United States Court of Federal Claims jurisdiction over a claim only if it "is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Plaintiff filed his original complaint in Case No. 22-15C on January 6, 2022, and his complaint in the above captioned Case No. 22-1602C on October 27, 2022. Both of plaintiff's complaints were filed within the six-year statute of limitations imposed by 28 U.S.C. § 2501. Accordingly, defendant's argument that this court is deprived of jurisdiction over plaintiff's claim by the statute of limitations fails. As explained in detail above, the Federal Circuit held in Jenkins that "[e]ven when the initial seizure and retention of property is properly done pursuant to the police power, the police power does not insulate the government from liability for a taking if the property is not returned after the government interest in retaining the property ceases." See Jenkins v. United States, 71 F.4th at 1373-74. Therefore, defendant cannot rely on the police power to insulate itself from takings liability for having seized plaintiff's property in this case, and defendant's argument that plaintiff's claim must be dismiss for failure to state a claim, fails.

Even though the court finds that plaintiff filed a timely complaint for the takings of the property at issue in the above captioned case, there remains a question of whether, reading Mr. Livingston's complaint in the above captioned case, Case No. 22-1602C, if his claim in this court actually sounds in takings or in tort. In Straw v. United States, 4 F.4th 1358, the Federal Circuit confirmed that when a plaintiff's "claim is in essence a tort claim," such claim "is outside the jurisdiction of the Claims Court under the Tucker Act[.]" See id. at 1361 (alteration added) (citing Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996)). The Federal Circuit has "recognized that 'the same operative facts may give rise to both a taking and a tort.'" Taylor v. United States, 959 F.3d 1081, 1086 (Fed. Cir. 2020) (quoting Moden v. United States, 404 F.3d 1335, 1339 n.1 (Fed. Cir. 2005)). The Federal Circuit also determined "a plaintiff may sue in the Court of Federal Claims on a takings claim regardless of whether the government's conduct leading to the taking was wrongful." See Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d at 1363. Despite the foregoing, even under the "liberal standards applied to motions to dismiss," see Kam-Almaz v. United States, 682 F.3d at 1371, plaintiff's claims in the above captioned case sound in tort, and plaintiff may not reframe a tort claim as a takings claim to obtain jurisdiction in this court. Rather, as another Judge of the Court of Federal Claims has

explained, "[w]hile '[t]he multipurpose nature of [a] complaint d[oes] not deprive the Court of Federal Claims of jurisdiction to entertain the takings claim alleged therein[,]' . . . the Court must still '"look to the true nature of the action"' to determine whether jurisdiction exists." Perry v. United States, 149 Fed. Cl. at 23 (first alteration and ellipsis added) (quoting El-Shifa Pharm. Indus. Co. v. United States, 378 F.3d at 1353-54; Nat'l Ctr. for Mfg. Scis. v. United States, 114 F.3d at 199 (quoting Katz v. Cisneros, 16 F.3d at 1207), and citing Pines Residential Treatment Ctr., Inc. v. United States, 444 F.3d at 1380). Moreover, "the mere fact that he [plaintiff] uses the word 'taking' is insufficient to support a claim within this Court's jurisdiction." Id. (alteration added) (citing Barksdale v. United States, 582 F. App'x 890, 892 (Fed. Cir. 2014)).

As indicated above, prior to filing either case in this court, plaintiff filed a Standard Form 95 with the Army seeking compensation for his tools and setting forth a claim under the FTCA. Following the Army's denial of his Standard Form 95 claim, plaintiff filed his earlier complaint in Case No. 22-15C in this court, claiming that the United States had acted "negligently and improperly" when it seized plaintiff's property. After Case No. 22-15C was voluntarily dismissed, plaintiff filed his complaint in the case currently before this court, Case No. 22-1602C. As explained above, plaintiff's earlier complaint in Case No. 22-15C and plaintiff's complaint in the above captioned case, Case No. 22-1602C, are nearly identical. Both complaints are six pages in length and both contain the same factual allegations. The only substantive difference between the two complaints, as explained above, is that plaintiff in the above captioned case removed the references to the United States Army acting "negligently and improperly," and plaintiff has substituted in their place a formulaic recitation of the elements of a Fifth Amendment taking claim. Additionally, plaintiff's prior claims asserted in his Standard Form 95 submitted to the Army, the Addendum submitted to the Army, and in his earlier complaint in Case No. 22-15C have alleged entitlement to the same amount of money as plaintiff's complaint does in the above captioned case, Case No. 22-1602C, all of which ask for $21,440.21 in damages. As explained above, when determining whether a claim is within the jurisdiction of this court, "the mere recitation of a basis for jurisdiction by either party or a court, is not controlling," but rather the court "must look to the true nature of the action." See Livingston v. Derwinski, 959 F.2d at 225; see also Boaz Hous. Auth. v. United States, 994 F.3d at 1367-68; Turner v. United States, 160 Fed. Cl. at 246. Plaintiff's prior attempts to seek compensation for the seizure of his property each have sounded in tort and have consistently challenged the propriety of the government's action on the basis of tortious actions by the Army. Plaintiff's complaint in the second, and current, case in this court, filed on October 27, 2022, Case No. 22-1602C, was his first attempt to recharacterize his claim as a taking. The more recently filed complaint currently before this court, however, relies on the same factual allegations as the tort claims plaintiff previously asserted, except that in the current case plaintiff has just attached the label of "taking" to these same factual allegations. The court concludes that in the current action before the court the "true nature" of plaintiff's claim is the same tort claim which plaintiff attempted to assert in the Army administrative proceedings when he filed the Standard Form 95, and in this court in his prior Case No. 22-15C. See Rodgers v. United States, 153 Fed. Cl. at 542. Regardless of plaintiff's minor changes to his most recently filed complaint, the United States Court of Federal Claims lacks subject matter jurisdiction to review what is, in

essence, plaintiff's tort claim. See Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343.

Defendant suggests that the court in this case should dismiss plaintiff's complaint and that "it would not be in the interests of justice to transfer this claim to the appropriate United States district court for adjudication of his tort claim." According to defendant, when the Army denied reconsideration of plaintiff's Standard Form 95 on June 9, 2021, the Army instructed plaintiff "that he had six months from that date, or *December 9, 2021*, within which to file a claim in 'an appropriate United States District Court.'" (emphasis in original) (citing 28 U.S.C. § 2401(b); 28 C.F.R. § 14.9). Defendant states that plaintiff "failed to file a claim in the appropriate district court by the deadline of December 9, 2021." (citing Jackson v. United States, 751 F.3d 712, 718 (6th Cir. 2014)). Defendant requests that because plaintiff's complaint in the above captioned case was filed on October 27, 2022, "the Court should determine that his claim remains 'forever barred,' because his *sole* remedy for a [sic] FTCA administrative claim denial was via Federal district court, within six months of the denial." (emphasis in original; alteration added) (citing 28 U.S.C. § 2401(b); 28 C.F.R. §14.9; Jackson v. United States, 751 F.3d at 718; Rodgers v. United States, 153 Fed. Cl. at 542). Therefore, defendant argues that "transfer would not be in the interest of justice." (citing Weston v. United States, 156 Fed. Cl. 9, 13 (2021), aff'd, No. 2022-1179, 2022 WL 1097361 (Fed. Cir. Apr. 13, 2022); 28 U.S.C. § 1631).

Plaintiff argues that "Defendant is incorrect that a claim in tort is forever barred in this case." Plaintiff argues that after the Army Court of Criminal Appeals denied his request for review, "[a] new claim could be deemed to have accrued on 15 June 2021 when the property was not returned after all legal reviews had been completed." (alteration added). According to plaintiff, he "has two years from 15 June 2021 to file a claim, or until 15 June 2023," and, therefore, "[a]s a claim is not statutorily, [sic] barred a potential transfer to federal court may be in the interest of justice." (alterations added).

The statute at 28 U.S.C. § 2401 sets forth the statute of limitations for tort claims against the United States, and provides in relevant part:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). The Army denied plaintiff's request for reconsideration of the Army's denial of plaintiff's Standard Form 95 request for compensation on June 9, 2021. As the "notice of final denial of the claim by the agency to which it was presented," the denial of reconsideration dated June 9, 2021 is the final denial from which the statute of limitations began to run on plaintiff's tort claim under 28 U.S.C. § 2401. See id. As the statute at 28 U.S.C. § 2401(b) indicates plaintiff was required to file his tort claim in a federal District Court "within six months after" the June 9, 2021 Denial. By the terms of the statute at 28 U.S.C. § 2401, plaintiff's tort claim would not be timely, as the statute of limitations for

plaintiff's tort claim ran on December 9, 2021. <u>See</u> <u>id.</u> Therefore, it would not be "in the interest of justice" for this court to transfer plaintiff's complaint to a United States District Court to assert a claim that is "forever barred." <u>See</u> <u>id.</u>

## CONCLUSION

For the reasons stated above, this court finds that if plaintiff's complaint had alleged a Fifth Amendment taking claim it potentially would have been timely filed within the statute of limitations imposed by 28 U.S.C. § 2501. The court also finds that the police power would not, necessarily, have insulated defendant from takings liability for the retention of plaintiff's property after the criminal case against plaintiff had concluded and plaintiff was not convicted of any crimes involving the seized property at issue in this case. Nonetheless, the court lacks jurisdiction over plaintiff's complaint in the above captioned case, Case No. 22-1602C, because the true nature of plaintiff's claim, even by plaintiff's own earlier descriptions, sounds in tort, over which this court does not possess jurisdiction. Furthermore, transfer to a federal United States District Court is not appropriate. Accordingly, plaintiff's complaint is **DISMISSED, with prejudice**. The Clerk of the Court is directed to enter judgment consistent with this Opinion.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**
